Alexander A. Berengaut (*pro hac vice*)
Megan A. Crowley (*pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5367
aberengaut@cov.com
mcrowley@cov.com

Rob Cameron
Nathan D. Bilyeu
JACKSON, MURDO & GRANT, P.C.
203 North Ewing
Helena, MT 59601
(406) 389-8244
rcameron@jmgattorneys.com
nbilyeu@jmgattorneys.com

*Attorneys for Consolidated Plaintiff TikTok Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| and | ) |
| | ) CV 23-56-M-DWM |
| TIKTOK INC., | ) CV 23-61-M-DWM |
| | ) |
| *Consolidated Plaintiff*, | ) **BRIEF IN SUPPORT OF** |
| | ) **CONSOLIDATED PLAINTIFF'S** |
| v. | ) **MOTION FOR PRELIMINARY** |
| | ) **INJUNCTION** |
| AUSTIN KNUDSEN, *in his official* | ) |
| *capacity as Attorney General of the* | ) |
| *State of Montana*, | ) |
| | ) |
| *Defendant*. | ) |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INDEX OF EXHIBITS TO CAMERON DECLARATION ............................. viii

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

    A.    TikTok Is a Popular Platform for Expression and Speech. ................. 2

    B.    TikTok Has Safeguards to Protect the Privacy and Security of U.S. User Data. ........................................................................ 3

    C.    TikTok Has Safeguards to Moderate Harmful Content and Protect Minor Users. ................................................................. 3

    D.    Montana Bans TikTok in the State. ............................................. 4

ARGUMENT ..................................................................................... 6

I.    Plaintiff Is Likely to Succeed on the Merits. ..................................... 6

    A.    The Ban Violates The First Amendment. ...................................... 6

        1.    The Ban Is a Content-Based Restriction and Prior Restraint That Fails Strict Scrutiny. .................................. 6

            (a)    The State Cannot Establish a Compelling State Interest. .............................................................. 9

            (b)    The Ban Is Not Narrowly Tailored. ............................ 11

        2.    The Ban Is Unconstitutional Even Under Intermediate Scrutiny. ............................................................... 14

        3.    The Ban Is Facially Overbroad. ..................................... 16

    B.    The Ban Is Preempted by Federal Law. ....................................... 17

        1.    The Ban Impermissibly Intrudes on the Field of Foreign Affairs. ................................................................. 18

|  |  | 2. | The Ban Impermissibly Conflicts with Federal Law. | 20 |
|  | C. | | The Ban Violates the Commerce Clause. | 23 |
|  |  | 1. | The Ban Unduly Burdens Interstate Commerce. | 23 |
|  |  | 2. | The Ban Unlawfully Discriminates Against Foreign Commerce. | 25 |
| II. | | | The Remaining Preliminary Injunction Factors Overwhelmingly Weigh in Favor of Maintaining the Status Quo. | 26 |
|  | A. | | The Ban Will Cause Plaintiff Irreparable Harm. | 26 |
|  | B. | | The Balance of Equities and Public Interest Require Preliminary Injunctive Relief. | 28 |
| CONCLUSION | | | | 29 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity v. Bonta,*
  141 S. Ct. 2373 (2021)......................................................................17

*Anderson v. City of Hermosa Beach,*
  621 F.3d 1051 (9th Cir. 2010) ..................................................14, 15

*Arellano v. Clark Cnty.,*
  875 F.3d 1213 (9th Cir. 2017) .............................................................21

*Arizona v. United States,*
  567 U.S. 387 (2012)............................................................................22

*Ashcroft v. Free Speech Coalition,*
  535 U.S. 234 (2002)............................................................................16

*Ass'n for Accessible Medicines v. Bonta,*
  562 F. Supp. 3d 973 (E.D. Cal. 2021) ...............................................28

*Bay Area Peace Navy v. United States,*
  914 F.2d 1224 (9th Cir. 1990) ....................................................15, 16

*Berger v. City of Seattle,*
  569 F.3d 1029 (9th Cir. 2009) ....................................................13, 15

*Board of Airport Commissioners v. Jews for Jesus,*
  482 U.S. 569 (1987)............................................................................17

*Boardman v. Pac. Seafood,*
  822 F.3d 1011 (9th Cir. 2016) ...........................................................28

*Brown v. Entm't Merchs. Ass'n,*
  564 U.S. 786 (2011)..........................................................10, 11, 13, 14

*Cal. Chamber of Commerce v. Council for Educ.,*
  29 F.4th 468 (9th Cir. 2022) ..............................................................26

*Calif. Pharmacists v. Maxwell-Jolly,*
  563 F.3d 847 (9th Cir. 2009) .............................................................27

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994)................................................................14

*Comite de Jornaleros v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir. 2011) ..............................................12

*Comptroller v. Wynne*,
    575 U.S. 542 (2015)............................................................23

*Crosby v. NFTC*,
    530 U.S. 363 (2000)...........................................18, 20, 21, 22

*Edwards v. City of Coeur d'Alene*,
    262 F.3d 856 (9th Cir. 2001) ..............................................15

*Elrod v. Burns*,
    427 U.S. 347 (1976)............................................................27

*FEC v. Cruz*,
    142 S. Ct. 1638 (2022)..........................................................9

*FEC v. Machinists*,
    655 F.2d 380 (D.C. Cir. 1981) ..............................................9

*Galvin v. Hay*,
    374 F.3d 739 (9th Cir. 2004) ...........................................7, 15

*Granholm v. Heald*,
    544 U.S. 460 (2005)............................................................25

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)................................................................9

*hiQ v. LinkedIn*,
    31 F.4th 1180 (9th Cir. 2022) ...............................................6

*Hurley v. Irish-Am. Grp.*,
    515 U.S. 557 (1995)........................................................7, 16

*IMDb.com v. Becerra*,
    257 F. Supp. 3d 1099 (N.D. Cal. 2017)...............................10

iv

*IMDb.com v. Becerra,*
    962 F.3d 1111 (9th Cir. 2020) ...............................................................11, 12, 13

*Jore Corp. v. Drillcraft,*
    2012 WL 12875775 (D. Mont. July 24, 2012) ...................................................27

*Kalantari v. Nitv,*
    352 F.3d 1202 (9th Cir. 2003) ...........................................................................22

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ...........................................................................28

*Members of City Council v. Taxpayers,*
    466 U.S. 789 (1984)............................................................................................17

*Mont. Med. Ass'n v. Knudsen,*
    591 F. Supp. 3d 905 (D. Mont. 2022)................................................................27

*Movsesian v. Victoria Versicherung,*
    670 F.3d 1067 (9th Cir. 2012) ...............................................................17, 18, 19

*In re Nat'l Sec. Letter,*
    33 F.4th 1058 (9th Cir. 2022) ..............................................................................8

*NFTC v. Natsios,*
    181 F.3d 38 (1st Cir. 1999)...........................................................................25, 26

*Odebrecht v. Prasad,*
    876 F. Supp. 2d 1305 (S.D. Fla. 2012).........................................................26, 28

*Odebrecht v. Sec'y, Fla. DOT,*
    715 F.3d 1268 (11th Cir. 2013) ..........................................................................23

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971).............................................................................................8

*Packingham v. North Carolina,*
    582 U.S. 98 (2017).............................................................................................1

*Perpich v. DoD,*
    496 U.S. 334 (1990)...........................................................................................17

*Pike v. Bruce Church*,
   397 U.S. 137 (1970)...................................................................................23, 25

*Project Veritas v. Schmidt*,
   --- F.4th ----, 2023 WL 4308952 (9th Cir. July 3, 2023)....................................14

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015).........................................................................................7, 8

*Reno v. ACLU*,
   521 U.S. 844 (1997).........................................................................................1, 13

*Rent-A-Center v. Canyon Television*,
   944 F.2d 597 (9th Cir. 1991) ...............................................................................28

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) ...............................................................................28

*Rosenberger v. Rector & Visitors of UVA*,
   515 U.S. 819 (1995)................................................................................................8

*South Dakota v. Wayfair*,
   138 S. Ct. 2080 (2018)..........................................................................................23

*Thunder Studios v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ..................................................................................6

*TikTok Inc. v. CFIUS*,
   No. 20-1444 (D.C. Cir. June 23, 2023) ...............................................................21

*TikTok Inc. v. Trump*,
   490 F. Supp. 3d 73 (D.D.C. 2020).................................................................22, 26

*TikTok Inc. v. Trump*,
   507 F. Supp. 3d 92 (D.D.C. 2020).......................................................................26

*Turner v. FCC*,
   512 U.S. 622 (1994)..............................................................................................12

*U.S. WeChat Users Alliance v. Trump*,
   488 F. Supp. 3d 912 (N.D. Cal. 2020)...................................................................8

*United States v. Playboy Entm't Group*,
529 U.S. 803 (2000) ..................................................................................7, 9

*Von Saher v. Norton Simon Museum*,
592 F.3d 954 (9th Cir. 2010) ...........................................................20

*Wash. Post v. McManus*,
944 F.3d 506 (4th Cir. 2019) ...........................................................10

*Winter v. NRDC*,
555 U.S. 7 (2008) ..................................................................................6

*Zschernig v. Miller*,
389 U.S. 429 (1968) ............................................................................18

**Statutes**

50 U.S.C. § 1702 ..................................................................................22, 23

50 U.S.C. § 4565 ..................................................................................20, 21

**Other Authorities**

U.S. Const., art. I, § 8, cl. 3 ..................................................................23

Werhan, *Freedom of Speech* (2004) ......................................................8

## INDEX OF EXHIBITS TO CAMERON DECLARATION

An Act Banning TikTok in Montana, SB 419 ............................................. Exhibit A

Transcript of Montana House of Rep. Judiciary Comm.
   Hearing on SB 419 (Mar. 28, 2023) ....................................................... Exhibit B

Transcript of Montana House of Rep.
   Floor Session (Apr. 13, 2023) ................................................................ Exhibit C

Haleluya Hadero, "Montana Gov Seeks to Expand TikTok Ban to
   Other Social Apps," *Associated Press* (Apr. 26, 2023) ......................... Exhibit D

Memorandum from Gov. Greg Gianforte to Kevin Gilbertson, Chief
   Information Officer (May 17, 2023) ....................................................... Exhibit E

Fran Beyer, "Mont. Gov. Knudsen to Newsmax:  State TikTok Ban
   First of Its Kind," *Newsmax* (Apr. 17, 2023) ......................................... Exhibit F

Press Release, Montana Governor's Office, "Governor Gianforte Bans
   TikTok in Montana" (May 17, 2023) ...................................................... Exhibit G

## INTRODUCTION

For more than 25 years, the Supreme Court has recognized the vital role that the Internet plays in a democratic society. *See Reno v. ACLU*, 521 U.S. 844, 885 (1997). It is "clear," the Court has explained, that online platforms have become "the most important places ... for the exchange of views," providing "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 582 U.S. 98, 104, 107 (2017). Ignoring the central importance of these online communities in modern life, the Montana Legislature passed an Act Banning TikTok in Montana (the "Ban"), forbidding all communication on this widely used forum by persons in this State.

The State's Ban is unconstitutional. It violates the First Amendment rights of Plaintiff TikTok Inc. and the thousands of Montanans who use TikTok to communicate. It is preempted by federal law because it intrudes on the federal government's exclusive authority over foreign affairs and national security. And it violates the Commerce Clause by unduly burdening interstate commerce and discriminating against foreign commerce. In light of these constitutional infirmities, enforcement of the Ban should be preliminarily enjoined in advance of the Ban's January 1, 2024 effective date.

TikTok Inc. easily meets the requirements for a preliminary injunction. First, TikTok Inc. is overwhelmingly likely to succeed on the merits of its claims.

1

Second, if not enjoined, enforcement of the Ban will inflict severe and irreparable harm on TikTok Inc. by restricting its speech and causing irreversible harm to its business.  Third, the balance of the equities and public interest weigh decisively in favor of preserving the status quo during the pendency of litigation, allowing TikTok Inc. and all Montanans who use the app to continue to exercise their First Amendment rights and preventing the State from exceeding its constitutional authority.

## STATEMENT OF FACTS

### A.  TikTok Is a Popular Platform for Expression and Speech.

TikTok is an online platform that enables users to create, share, and view videos and other forms of content.  Chandlee Decl. ¶ 3.[1]  TikTok users also communicate on the platform in other ways, including by commenting on videos, "tagging" users in comments, and using the app's "duet" and "stitch" tools to create new content that incorporates and responds to content created by others.  *Id.* Adult users can also exchange direct messages with other users and use the "TikTok LIVE" feature to communicate live with others.  *Id.* ¶¶ 3, 25.

As of March 2023, more than 150 million Americans use TikTok every month, including hundreds of thousands in Montana.  *Id.* ¶¶ 7-8.  On TikTok, users

---

[1] References to "TikTok Inc." are to the corporation that is the plaintiff in this action; references to "TikTok" are to the platform and business.

express their opinions and communicate with others about a wide range of social, political, and business issues.  *Id.* ¶¶ 9-11.  Many TikTok users also use the app to research vacations or learn about history or current events.  *Id.* ¶ 9.

### B.     TikTok Has Safeguards to Protect the Privacy and Security of U.S. User Data.

TikTok is committed to protecting its users' privacy.  Like other online platforms, TikTok collects certain information from its U.S. users, including username, date of birth, and, depending on how they sign up for the app, phone number or email address.  *Id.* ¶ 29.  The current version of TikTok does not collect GPS information from U.S. users.  *Id.* ¶ 8 n.2.

As TikTok Inc.'s President of Global Business Solutions Blake Chandlee explains in his accompanying declaration, TikTok Inc. has devoted significant resources to maintaining the security of U.S. user data, including against foreign government access.  *Id.* ¶¶ 31-33.  He further explains that the company has not received any requests for U.S. user data from the Chinese government; has not shared any U.S. user data with the Chinese government in response to such a request; and would not do so if it were to receive a request.  *Id.* ¶ 30.

### C.     TikTok Has Safeguards to Moderate Harmful Content and Protect Minor Users.

TikTok has implemented a multi-layered set of features, policies, and procedures to protect minors from inappropriate or harmful content on the app.  *Id.*

3

¶ 17.  TikTok's Community Guidelines prohibit users from showing or promoting dangerous activities and challenges.  *Id.* ¶ 19.  The company proactively enforces the Guidelines through technology-based and human moderation.  *Id.* ¶ 22.  In the first quarter of 2023, 97.1% of videos identified as violating the Guidelines' prohibition on "dangerous acts and challenges" were removed before anyone reported them to TikTok; 85.1% of videos were removed within 24 hours of posting; and 71.1% of videos were removed before receiving any views.  *Id.* ¶ 23.  TikTok also provides a variety of age-based settings and controls to protect minor users.  *Id.* ¶¶ 24-27.

### D.    Montana Bans TikTok in the State.

On April 14, 2023, the Montana Legislature passed SB 419, An Act Banning TikTok in Montana.  The Ban does exactly what its name suggests:  It prohibits "the operation of tiktok" within Montana.  Cameron Decl. Ex. A ("Ban") § 1(1).  The Ban imposes a $10,000 penalty each time "a user accesses tiktok, is offered the ability to access tiktok, or is offered the ability to download tiktok" in the State.  *Id.* §§ 1(2), 1(7)(a).  Such penalties accrue against Plaintiff and any "mobile application store."  *Id.* §§ 1(5), 1(7)(b).

The Ban includes several unsubstantiated findings about the supposed threat TikTok poses to national security and minor safety, including that:

4

(1)     "the People's Republic of China ['PRC'] is an adversary of the United States and Montana" that "exercises control and oversight over ByteDance," TikTok Inc.'s ultimate parent, "and can direct the company to share user information, including real-time physical locations of users";

(2)     "TikTok gathers significant information from its users, accessing data against their will to share with the [PRC]";

(3)     "TikTok's stealing of information and data from users and its ability to share that data with the Chinese Communist Party ['CCP'] unacceptably infringes on Montana's right to privacy";

(4)     "TikTok's continued operation in Montana serves as a valuable tool to the [PRC] to conduct corporate and international espionage in Montana and may allow the [PRC] to track the real-time locations of ... individuals adverse to the [CCP's] interests"; and

(5)     "TikTok fails to remove, and may even promote, dangerous content that directs minors to engage in dangerous activities," which "threatens the health and safety of Montanans."

*Id*. at 1-2.  Proponents of the Ban also expressed concern that TikTok promotes or censors content on behalf of the CCP, describing TikTok (without any evidence) as "the perfect tool for mass surveillance, political interference and influence

operations" by the CCP, "a powerful propaganda tool," and "the music played by the Pied Piper to steal this generation's heart and mind."  Cameron Decl. Ex. B (Judiciary Comm. Tr.) at 12:3-5, 13:9-11, 39:8-9.

After the legislation passed, the Governor acknowledged "technical and legal concerns" with it and suggested certain changes.  *Id.* Ex. D (AP Article).  The Legislature did not consider those changes, however—which were themselves legally problematic—and the Governor nonetheless signed the Ban into law.

## ARGUMENT

Montana's Ban on TikTok should be enjoined because TikTok Inc. has established that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities favors TikTok Inc., and (4) an injunction is in the public interest.  *See Winter v. NRDC*, 555 U.S. 7, 20 (2008).  "[W]hen the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only serious questions going to the merits."  *hiQ v. LinkedIn*, 31 F.4th 1180, 1188 (9th Cir. 2022) (cleaned up).

## I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

### A.   The Ban Violates The First Amendment.

1.   <u>The Ban Is a Content-Based Restriction and Prior Restraint That Fails Strict Scrutiny.</u>

The First Amendment protects the rights of companies like TikTok Inc. to speak online.  *See Thunder Studios v. Kazal*, 13 F.4th 736, 745 (9th Cir. 2021)

(emails and tweets "fall squarely within the protection of the First Amendment").

TikTok Inc.'s editorial choices over what speech to allow on the platform also "fall

squarely within the core of First Amendment security." *Hurley v. Irish-Am. Grp.*,

515 U.S. 557, 569-70 (1995). For any form of expression, "there is a strong First

Amendment interest" in protecting a speaker's right "to reach a particular

audience." *Galvin v. Hay*, 374 F.3d 739, 752 (9th Cir. 2004). The Ban eliminates

both these forms of protected speech, prohibiting TikTok Inc. from speaking to and

making curated content available to users in Montana. These restrictions trigger

strict scrutiny—the most stringent level of First Amendment review—for two

reasons.

　　*First*, the Ban is subject to strict scrutiny because it is a content- and

viewpoint-based restriction on speech. A law is content-based if it "applies to

particular speech because of the topic discussed or the idea or message expressed."

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Here, the Ban singles out

TikTok because of its alleged promotion or tolerance of videos uploaded by users

depicting dangerous activities, such as cars swerving at high speeds. Ban at 2.

The Ban thus "targets speech based on its communicative content." *Reed*, 576

U.S. at 163. "It is rare" that such a restriction "will ever be permissible." *United*

*States v. Playboy Entm't Group*, 529 U.S. 803, 818 (2000). Because the Ban is

also viewpoint-based—targeting Plaintiff because it purportedly promotes content

7

favorable to China, *see* Cameron Decl. Ex. B (Judiciary Comm. Tr.) at 12:3-5,

13:9-11, 39:8-9, 40:12-13—"the violation of the First Amendment is all the more

blatant." *Rosenberger v. Rector & Visitors of UVA*, 515 U.S. 819, 829 (1995)

("Viewpoint discrimination is thus an egregious form of content discrimination.").

     *Second*, the Ban is a prior restraint because it suppresses speech in advance

of its actual expression, prohibiting all TikTok users—including TikTok Inc.—

from communicating with users in Montana, and prohibiting users in Montana

from communicating with anyone else on TikTok. *See Org. for a Better Austin v.*

*Keefe*, 402 U.S. 415, 418-19 (1971) (injunction against distributing leaflets is prior

restraint); *U.S. WeChat Users Alliance v. Trump*, 488 F. Supp. 3d 912, 926 (N.D.

Cal. 2020) (ban on communications app is prior restraint). "[W]hen a statute

constitutes a prior restraint, we apply a heavy presumption against its

constitutionality." *In re NSL*, 33 F.4th 1058, 1081 (9th Cir. 2022) (Murguia, C.J.,

concurring); *see also* Keith Werhan, *Freedom of Speech* 138 (2004) (the Supreme

Court has "subjected content-based prior restraints to a super-strict scrutiny").

     For both of these reasons, the TikTok Ban is subject to strict scrutiny,

"which requires the Government to prove that the restriction furthers a compelling

interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171.

"If a less restrictive alternative would serve the Government's purpose, the

legislature must use [it]." *Playboy*, 529 U.S. at 813.  Here, the State has not met its burden.

     *(a)*  *The State Cannot Establish a Compelling State Interest.*

  The State relies on two purported state interests to justify the Ban.  First, the Ban makes a series of unsubstantiated allegations about TikTok posing a threat to national security, alleging, for example, that TikTok "gathers significant information from its users" and shares that data with the PRC.  Ban at 1.  Second, the Ban alleges without evidence that "TikTok fails to remove, and may even promote, dangerous content that directs minors to engage in dangerous activities." *Id.*  Neither interest is constitutionally sufficient to justify the State's restraint on speech.

  Regarding national security, the State cannot justify a ban on speech by pointing to an interest for which it has no constitutional authority to legislate.  *See Hines v. Davidowitz*, 312 U.S. 52, 63 (1941) (federal government's national security authority should "be left entirely free from local interference"); *FEC v. Machinists*, 655 F.2d 380, 389 (D.C. Cir. 1981) (no compelling interest if agency lacks power to act).  The State has neither legal authority nor practical expertise to legislate in the realm of national security, and its asserted interests are entirely conjectural.  Thus, these interests are insufficient under the First Amendment. *FEC v. Cruz*, 142 S. Ct. 1638, 1653 (2022) ("We have never accepted mere

conjecture as adequate to carry a First Amendment burden." (cleaned up)). "Without direct evidence (or anything close to it) of [foreign] meddling," the State "has failed to show that this purported threat is likely or imminent enough to justify the Act's intrusive preventative measures." *Wash. Post v. McManus*, 944 F.3d 506, 521 (4th Cir. 2019).

Having "failed to present any colorable argument or evidence … that its speech restriction is actually necessary," the State cannot now "go fishing for a justification." *IMDb.com v. Becerra*, 257 F. Supp. 3d 1099, 1102 (N.D. Cal. 2017), *aff'd*, 962 F.3d 1111 (9th Cir. 2020).  But even if evidence not before the Legislature were considered, it would show that TikTok collects information from U.S. users in accordance with its Privacy Policy and Terms of Service, and is implementing a system of controls to further mitigate data security risks associated with foreign government access to U.S. user data.  Chandlee Decl. ¶¶ 28-34; Weber Decl. ¶¶ 10, 14-16.  Even post-enactment rationalizations thus cannot support a compelling state interest.

The State's second asserted interest—preventing minors from viewing allegedly dangerous content on TikTok—is likewise insufficient to overcome the First Amendment.  The State does not have "a free-floating power to restrict the ideas to which children may be exposed." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 794 (2011).  Even if it had that power, the Legislature undertook no

analysis regarding the efficacy of TikTok's safety features or content moderation policies, which expressly "do not allow showing or promoting dangerous activities and challenges."  Chandlee Decl. ¶ 19.  And even if the State could show that TikTok's moderation processes were deficient, any resulting increase in dangerous content on TikTok would *still* not be a basis to ban the app because it would not eliminate such content from other platforms.  *See Brown*, 564 U.S. at 803 n.9 ("[T]he government does not have a compelling interest in each marginal percentage point by which its goals are advanced.").

*(b)*     *The Ban Is Not Narrowly Tailored.*

The Ban also fails strict scrutiny because the State has not established that the Ban is narrowly tailored and the least restrictive means to address the State's interests.  A statute is not narrowly tailored if it is either over-inclusive or under-inclusive.  *IMDb.com*, 962 F.3d at 1125.  The Ban is both.

As to the State's purported national security concerns, the Ban is over-inclusive because "the State has not explored, or even considered," a less restrictive means—short of a total ban—to address its concerns.  *Id.*  For example, the State could restrict the kinds of data that companies may collect from Montana users, prevent companies from selling or providing data to certain third parties, or impose other security and data access requirements.  Alternatively, the State could require heightened data security protections for the "public officials, journalists,

11

and other individuals adverse to the [CCP]'s interests" whom the Ban identifies as high-risk users, rather than applying the Ban to every person who lives in, travels to, or passes through Montana. Indeed, the Governor has already banned TikTok and other foreign-owned apps from government devices, an unjustifiable restriction that nevertheless illustrates the wide range of less restrictive alternatives to a total ban. Cameron Decl. Ex. E (Gianforte Memo).[2]  Without "point[ing] to any evidence demonstrating that less restrictive measures would not be effective," the State "cannot meet its burden" under strict scrutiny. *IMDb.com*, 962 F.3d at 1126.

The Ban also fails strict scrutiny because it is under-inclusive. The data security issues cited by the State are an "industry-wide issue," Weber Decl. ¶ 17, yet the Ban targets TikTok alone. *See Turner v. FCC*, 512 U.S. 622, 659 (1994) ("Regulations that discriminate among media ... present serious First Amendment concerns."). As Professor Weber explains in his accompanying declaration, there are other ways that a hostile foreign government could access and exploit U.S. user data—including by purchasing it through data brokers or through hacking—yet the

_____

[2] Two days after signing the Ban, Governor Gianforte signed the Montana Consumer Data Privacy Act, which imposes various data security and privacy requirements on companies operating in Montana, but does not specifically address TikTok. Where, as here, the government "has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech," its speech restraint is not narrowly tailored. *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011).

12

Ban leaves those concerns unaddressed.  Weber Decl. ¶ 13.  Thus, the Ban is not

narrowly tailored because it "eliminates one form of speech while at the same time

allowing unlimited numbers of other types ... that create the same problem."

*IMDb.com*, 962 F.3d at 1126 (cleaned up).

　　As for the State's minor-safety concerns, banning TikTok for *all* Montana-

based users is disproportionate to any legitimate interest in protecting *minors* from

dangerous content.   An "interest in protecting children from harmful materials ...

does not justify an unnecessarily broad suppression of speech addressed to adults."

*ACLU*, 521 U.S. at 875; *see also Berger v. City of Seattle*, 569 F.3d 1029, 1045

(9th Cir. 2009) (restriction not tailored if "[i]t applies to a large number of

individuals who have no connection to the [State's] asserted [interest]").  And there

are less restrictive alternatives available to address the State's alleged concerns,

such as mandating parental controls or safety tools for minors.  *See Brown*, 564

U.S. at 804-05 (ban on selling violent video games to children is unconstitutional).

　　The Ban also fails strict scrutiny because it is under-inclusive in its approach

to minor safety.  Under the Ban, for example, a minor would be barred from

watching certain "dangerous" content on TikTok, but could view that same content

on other online platforms—or on TikTok itself if the company is sold to a domestic

buyer.  *See* Ban § 4.  Such "[u]nderinclusiveness raises serious doubts about

whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown*, 564 U.S. at 802.

        2.      <u>The Ban Is Unconstitutional Even Under Intermediate Scrutiny.</u>

Even if the Court evaluates the Ban as a content-neutral "time, place, or manner" restriction subject to intermediate scrutiny, Plaintiff is still likely to succeed on the merits.  Intermediate scrutiny requires that a speech restriction be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1064-65 (9th Cir. 2010) (citations omitted).

The Ban fails intermediate scrutiny because, by shutting down TikTok in Montana, it "foreclose[s] an entire medium of expression." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994).  The Supreme Court "ha[s] voiced particular concern" with such laws, *id.*, and a "long line of Supreme Court cases indicates that such laws are almost *never* reasonable," *Anderson*, 621 F.3d at 1064 (collecting cases).  For example, in *City of Ladue*, the Supreme Court explained that "[a]lthough prohibitions foreclosing entire media may be completely free of content or viewpoint discrimination, the danger they pose to the freedom of speech is readily apparent—by eliminating a common means of speaking, such measures can suppress too much speech." 512 U.S. at 55; *see Project Veritas v. Schmidt*, --- F.4th ----, 2023 WL 4308952, at *13 (9th Cir. July 3, 2023) ("[A] regulation that

14

forecloses an entire medium of public expression across the landscape of a particular community or setting fails to leave open ample alternatives." (citation omitted)).  Just so here, where the Ban shutters an important means of communication throughout Montana.

Even if the Ban were analyzed under the standard applicable to "time, place, or manner" restrictions, it should be enjoined because it is not "narrowly tailored to serve a significant governmental interest." *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 862 (9th Cir. 2001); *Anderson*, 621 F.3d at 1064.  Such a restriction "must target and eliminate no more than the exact source of the evil it seeks to remedy." *Berger*, 569 F.3d at 1041 (cleaned up).  As discussed above, the Ban is substantially broader than necessary to achieve the State's asserted interests.  *See supra* at 11-13.

The Ban also does not leave open ample alternative channels of communication, as intermediate scrutiny requires.  *See Anderson*, 621 F.3d at 1065.  "An alternative is not ample if the speaker is not permitted to reach the 'intended audience,'" or "if the speaker's 'ability to communicate effectively is threatened.'"  *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (citations omitted).  By shuttering the platform, the Ban deprives TikTok Inc. of its "intended audience"—TikTok users in Montana—and interferes with its right to distribute curated content throughout the state.  *See Galvin*, 374

15

F.3d at 752 ("[T]here is a strong First Amendment interest in ... protecting speakers seeking to reach a particular audience."); *Hurley*, 515 U.S. at 570 ("the presentation of an edited compilation of speech generated by other persons ... fall[s] squarely within the core of First Amendment security").

Even as to the content TikTok Inc. creates and posts on its own account, other platforms are not adequate alternatives. TikTok has distinctive characteristics which differentiate it from other platforms, including its focus on recommending content based on an individual user's interests, instead of a user's interaction with existing friends and family, and the organic reach of videos posted on the platform. Chandlee Decl. ¶¶ 15-16. These characteristics make TikTok a uniquely valuable forum for its users, including TikTok Inc. itself. As a result, TikTok Inc. cannot simply use another platform to exercise its First Amendment rights. *See Bay Area*, 914 F.2d at 1229.

### 3.   The Ban Is Facially Overbroad.

The Ban also violates the First Amendment because it is facially overbroad. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere."). A statute is overbroad if there is a "realistic danger that the statute itself will significantly compromise

recognized First Amendment protections of parties not before the Court."

*Members of City Council v. Taxpayers*, 466 U.S. 789, 801 (1984).

In *Board of Airport Commissioners v. Jews for Jesus*, for example, the

Supreme Court invalidated on overbreadth grounds a regulation that prohibited

"First Amendment activities" within the Los Angeles Airport. 482 U.S. 569, 574

(1987). In striking down the regulation, the Court explained that it is "obvious that

such a [sweeping] ban cannot be justified ... because no conceivable governmental

interest would justify such an absolute prohibition of speech." *Id.* at 575. So, too,

here. Because the Ban eliminates an important medium of communication in

Montana, "the law 'lacks a plainly legitimate sweep,'" and is facially

unconstitutional. *Ams. for Prosperity v. Bonta*, 141 S. Ct. 2373, 2387 (2021)

(citation omitted).

## B.    The Ban Is Preempted by Federal Law.

The Ban is preempted by federal law because Montana lacks the authority to

regulate foreign affairs and national security. *See Perpich v. DoD*, 496 U.S. 334,

351 (1990) ("Several constitutional provisions commit matters of foreign policy

and military affairs to the exclusive control of the National Government.").

Foreign affairs preemption "encompasses two related, but distinct, doctrines:

conflict preemption and field preemption." *Movsesian v. Victoria Versicherung*,

670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). Under "field preemption," a state

17

law is preempted "if it intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Id.* at 1072. Under "conflict preemption," a state law is preempted "when it conflicts with an express federal foreign policy," *id.* at 1071, or when "the challenged law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress," *Crosby v. NFTC*, 530 U.S. 363, 373 (2000). Under either doctrine, the Ban is preempted as an unconstitutional attempt to establish state-level foreign policy against China.

1.   The Ban Impermissibly Intrudes on the Field of Foreign Affairs.

Under field preemption, "when a state law (1) has no serious claim to be addressing a traditional state responsibility and (2) intrudes on the federal government's foreign affairs power, the Supremacy Clause prevents the state statute from taking effect." *Movsesian*, 670 F.3d at 1074. Thus, "even in the absence of any treaty, federal statute, or executive order, a state law may be unconstitutional if it 'disturb[s] foreign relations' or 'establish[es] its own foreign policy.'" *Id.* at 1072 (quoting *Zschernig v. Miller*, 389 U.S. 429, 440-41 (1968)).

Here, because the Ban—as Defendant himself acknowledged—is the State's attempt to "push[ ] back against the Chinese communist government," Cameron Decl. Ex. F (Newsmax Article), it "intrudes on the field of foreign affairs entrusted exclusively to the federal government," *Movsesian*, 670 F.3d at 1077. For example, the Ban asserts that China is an "adversary of the United States" that uses

18

TikTok to conduct "international espionage" and "track the real-time locations" of "individuals adverse to the [CCP's] interests." Ban at 1-2. And the Ban is void if TikTok is "sold to a company that is not incorporated in any other country designated as a foreign adversary"—an explicit attempt to create state-level foreign policy. *Id.* § 4.

The legislative record—based entirely on unfounded speculation—reinforces this conclusion. For example, Attorney General Knudsen, whose office reportedly drafted the Ban, *id.* Ex. F (Newsmax Article), argued that it is necessary because "[China] see[s] a war with the United States as inevitable, and they're using TikTok as an initial salvo in that war," *id.* Ex. B (Judiciary Comm. Tr.) at 5:9-10. The legislation's primary sponsor, Senator Vance, urged her colleagues to support the Ban because, she claimed, it "puts an end to China's surveillance operation in Montana," *id.* at 3:17, and Representative Ler, the Ban's sponsor in the House of Representatives, argued that "TikTok is a national security threat" and urged his colleagues to "stand up to the Chinese and ban TikTok," *id.* Ex. C (House Floor Tr.) at 1:20-21, 2:23-24. Similarly, Governor Gianforte stated that he signed the Ban to protect Montanans' personal data "from intelligence gathering by the [CCP]." *Id.* Ex. G (Press Release). The Ban thus impermissibly "expresses a distinct political point of view on a specific matter of foreign policy," over which the federal government has exclusive authority. *Movsesian*, 670 F.3d at 1076.

19

The Ban's minor-safety rationale does not alter this conclusion.  Indeed, courts "have consistently struck down laws" that "purport to regulate an area of traditional state competence, but in fact, affect foreign affairs."  *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 964 (9th Cir. 2010) (collecting cases).  That the Ban is void if TikTok is sold to a domestic buyer—*even if* purportedly dangerous content remains on the platform—underscores that the true purpose of the Ban is to regulate foreign affairs, notwithstanding its purported minor-safety justification.  Ban § 4.

2.    The Ban Impermissibly Conflicts with Federal Law.

The Ban is also preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby*, 530 U.S. at 373.  Congress has enacted multiple federal statutes to address the purported national security risks cited in the Ban, which leave no room for state regulation.

*First*, Section 721 of the Defense Production Act, 50 U.S.C. § 4565, authorizes the Committee on Foreign Investment in the United States ("CFIUS"), an interagency committee of the Executive Branch, to review foreign acquisitions of U.S. businesses for national security risks.  If CFIUS determines that a "covered transaction" would adversely affect "the national security of the United States," *id.* § 4565(b)(2)(A), CFIUS is empowered to mitigate those risks by "negotiat[ing],

20

enter[ing] into or impos[ing]" conditions on the parties to the transaction, *id.* § 4565(*l*)(3)(A)(i).  If the risks cannot be mitigated, CFIUS refers the transaction to the President, who can prohibit the transaction if he finds "credible evidence" it would "impair the national security," and existing law does not "provide adequate and appropriate authority" to protect national security.  *Id.* § 4565(d).

Under the CFIUS framework, Plaintiff and the federal government are currently negotiating an agreement to address the federal government's national security concerns related to TikTok.  *See* Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. June 26, 2023) (Plaintiff and the U.S. government "continue to be involved in ongoing negotiations to determine" whether any national security concerns "may be resolved by mutual agreement").  By banning TikTok in Montana irrespective of these ongoing negotiations and *even if* an agreement is reached, the Ban "interferes with the methods by which the federal statute was designed to reach its goal."  *Arellano v. Clark Cnty.*, 875 F.3d 1213, 1216 (9th Cir. 2017) (cleaned up).

While the State may purport to share the federal government's goal of protecting Americans' data security, "[t]he fact of a common end hardly neutralizes conflicting means."  *Crosby*, 530 U.S. at 379.  The Ban undermines the federal government's more precise "calibration of force" and "compromises the

very capacity of the President to speak for the Nation with one voice in dealing with other governments." *Id.* at 380-81.

*Second*, the Ban conflicts with the International Emergency Economic Powers Act ("IEEPA"), which authorizes the President to regulate certain foreign-related property during a national emergency. *See* 50 U.S.C. § 1702(a)(1)(B). The President's IEEPA authority "does not include the authority to regulate or prohibit, directly or indirectly ... [any] personal communication, which does not involve a transfer of anything of value" or the importation or exportation "of any information or informational materials." *Id.* §§ 1702(b)(1), (3). Congress designed these provisions to balance national security with First Amendment rights. *See Kalantari v. Nitv*, 352 F.3d 1202, 1205 (9th Cir. 2003) (provisions designed to "prevent the executive branch from restricting the international flow of materials protected by the First Amendment").

The Ban "upsets the balance" Congress struck in IEEPA. *Arizona v. United States*, 567 U.S. 387, 403 (2012). As an online platform for communication, TikTok transmits "information or informational materials" and "personal communication," and thus cannot be regulated under IEEPA. *See TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 83 (D.D.C. 2020) (enjoining presidential order banning TikTok). By banning TikTok notwithstanding IEEPA's express language protecting "personal communications" and "information or informational

22

materials," 50 U.S.C. §§ 1702(b)(1), (3), the Ban "sweeps more broadly than the federal regime" and is accordingly preempted. *Odebrecht v. Sec'y, Fla. DOT*, 715 F.3d 1268, 1287 (11th Cir. 2013) (state law limiting public contracts with companies operating in Cuba preempted because it "undermines the full purposes and objectives" of federal sanctions regime).

### C.    The Ban Violates the Commerce Clause.

The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States."  U.S. Const., art. I, § 8, cl. 3. The Clause has long been interpreted "to contain a further, negative command, known as the dormant Commerce Clause," *Comptroller v. Wynne*, 575 U.S. 542, 549 (2015) (citation omitted), which prohibits states from imposing an undue burden on, or discriminating against, interstate or foreign commerce, *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2090-91 (2018).  The Ban violates both of these constitutional limitations.

#### 1.    The Ban Unduly Burdens Interstate Commerce.

A state law imposes an undue burden on interstate commerce if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970).  Here, the burdens of the Ban would disproportionately fall on non-Montana TikTok users, who could

be required to share *more* data with TikTok, or who may be blocked from accessing TikTok altogether.

Unlike other online platforms, the current version of TikTok does not collect GPS location information from U.S. users, Chandlee Decl. ¶ 8 n.2, and therefore cannot track "the real-time physical locations of users," as the Legislature purported to find, Ban at 1. As explained by Karen Sprenger, a Missoula-based cybersecurity expert with more than 30 years of experience, TikTok could seek to geolocate users based on IP address information, but this is an inexact way to identify a user's location. Sprenger Decl. ¶¶ 8-17. Accordingly, implementing the Ban through IP address information would be imprecise, necessarily allowing some users in Montana to access the app, while denying access to other users outside of Montana who are not subject to the Ban. *Id.* ¶ 4.

As Ms. Sprenger also explains, if TikTok were required to implement more reliable technology to geolocate its users, it would be forced to collect GPS or other geolocation data *from all U.S. TikTok users*, both inside and outside Montana. *Id.* ¶ 5. Accordingly, while the State purports to be concerned that "TikTok gathers significant information from its users," Ban at 1, the logical result of the Ban would be to force Plaintiff to collect *more* data, such as GPS location data, from all 150 million plus TikTok users in the United States.

24

In contrast to these burdens on interstate commerce, the local benefits from the Ban are "minimal at best." *Pike*, 397 U.S. at 146.  As discussed above, the legislative record includes only conjecture that TikTok poses any risk to Montanans' personal privacy or safety. *Supra* at 4-6, 9-11.

> 2.  The Ban Unlawfully Discriminates Against Foreign Commerce.

By imposing a statewide ban on TikTok only so long as Plaintiff remains owned by ByteDance or a company incorporated in "any … country designated as a foreign adversary," Ban § 4, the Ban facially discriminates against foreign commerce and therefore "face[s] a virtually *per se* rule of invalidity," *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (citation omitted).

In *NFTC v. Natsios*, for example, Massachusetts prohibited state agencies from purchasing goods or services from entities "doing business with Burma," including any "majority-owned subsidiary" of an entity headquartered in Burma. 181 F.3d 38, 46-47 (1st Cir. 1999), *aff'd on other grounds*, *Crosby*, 530 U.S. at 373 & n.8.  The First Circuit held that the law facially discriminated against foreign commerce, in part because its "chief goal" was to "affect business decisions pertaining to a foreign nation." *Id.* at 68.

The same is true here.  The Ban prohibits Montanans from using TikTok unless TikTok is "sold to a company that is not incorporated in" China or another country "designated as a foreign adversary."  Ban § 4.  The Ban is thus a "direct

25

attempt to regulate the flow of foreign commerce." *Natsios*, 181 F.3d at 68; *see also Odebrecht v. Prasad*, 876 F. Supp. 2d 1305, 1318-19 (S.D. Fla. 2012) (state law preventing government contracts with companies operating in Cuba facially discriminated against foreign commerce), *aff'd sub nom Odebrecht*, 715 F.3d at 1287.

The State cannot justify this discrimination against foreign commerce, as the Ban's national security rationale is not a "legitimate *local* purpose." *Taylor*, 477 U.S. at 140 (emphasis added).  And, as discussed above, nondiscriminatory alternatives to the Ban are readily available.  *Supra* at 11-13.

## II.   THE REMAINING PRELIMINARY INJUNCTION FACTORS OVERWHELMINGLY WEIGH IN FAVOR OF MAINTAINING THE STATUS QUO.

### A.   The Ban Will Cause Plaintiff Irreparable Harm.

Absent preliminary injunctive relief, the Ban will inflict irreparable harm on Plaintiff during the pendency of this litigation.  *See TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 113 (D.D.C. 2020) (federal ban would inflict irreparable harm); *Trump*, 490 F. Supp. 3d at 84 (same).

"Irreparable harm is relatively easy to establish in a First Amendment case. The plaintiff need only demonstrate the existence of a colorable First Amendment claim." *Cal. Chamber of Commerce v. Council for Educ.*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up).  The Ban violates the First Amendment rights of Plaintiff

and all Montanans who use the app, which "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Moreover, Plaintiff lacks an adequate remedy at law because "enforcement actions are imminent," "repetitive penalties attach to continuing or repeated violations and [Plaintiff] lacks the realistic option of violating the law once and raising its federal defenses." *Mont. Med. Ass'n v. Knudsen*, 591 F. Supp. 3d 905, 914 (D. Mont. 2022) (citation omitted). Under such circumstances, "irreparable harm is likely to occur absent injunctive relief." *Id.* at 915.

To comply with the Ban, TikTok will have to shut down in Montana, which will cause irreversible damage to Plaintiff's business. Some users will shift their speech to other online platforms and may not return, even if the Ban is later lifted. Chandlee Decl. ¶ 38; *see, e.g.*, *Jore Corp. v. Drillcraft*, 2012 WL 12875775, at *2 (D. Mont. July 24, 2012) ("loss of market share" constitutes irreparable harm).

The Ban will undermine Plaintiff's relationship with commercial partners in Montana, leading to an erosion of its competitive position and a loss of revenue that cannot be recovered. *See Calif. Pharmacists v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (money damages are irreparable where plaintiff can "obtain no [monetary relief] against the state because of the Eleventh Amendment"), *vacated on other grounds*, 565 U.S. 606 (2012). More broadly, the Ban harms TikTok Inc.'s reputation and goodwill by casting the company as susceptible to control by

27

the Chinese Government.  *See Rent-A-Center v. Canyon Television*, 944 F.2d 597,

603 (9th Cir. 1991) ("damage to … goodwill, qualif[ies] as irreparable harm").

Indeed, although the Ban takes effect on January 1, 2024, it is already causing a

negative business impact.  Chandlee Decl. ¶ 40.

### B. The Balance of Equities and Public Interest Require Preliminary Injunctive Relief.

The last two steps of the preliminary injunction analysis—the balance of

equities and public interest—likewise cut in Plaintiff's favor.  *See Roman v. Wolf*,

977 F.3d 935, 941 (9th Cir. 2020) (these factors merge when the government is a

party).  In assessing these factors, courts consider the impact an injunction would

have on the parties and on affected nonparties.  *See Boardman v. Pac. Seafood*,

822 F.3d 1011, 1023-24 (9th Cir. 2016).

There is a "significant public interest" in upholding the First Amendment

rights of TikTok Inc. and thousands of TikTok users in Montana.  *Klein v. City of

San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).  There is also a public interest

in "a unified federal policy toward" China "that is not impeded or restricted by"

the State.  *Odebrecht*, 876 F. Supp. 2d at 1321.  Finally, the public interest favors a

preliminary injunction "because Plaintiff has established a likelihood of success on

its dormant Commerce Clause claim."  *Ass'n for Accessible Medicines v. Bonta*,

562 F. Supp. 3d 973, 989 (E.D. Cal. 2021).

28

By contrast, the State will not face harm if the status quo is preserved. TikTok has been available in the United States since 2017, yet the State identified no evidence of actual harm to any Montanan as a result of using TikTok and delayed the Ban's effective date until January 1, 2024, Ban § 5, undercutting any argument that the Ban is urgently needed to serve any legitimate State interest.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for a Preliminary Injunction.

Dated: July 5, 2023                           Respectfully submitted,


                                              */s/ Rob Cameron*
                                              Rob Cameron
                                              Nathan D. Bilyeu
                                              JACKSON, MURDO & GRANT, P.C.
                                              203 North Ewing
                                              Helena, MT 59601
                                              (406) 389-8244
                                              rcameron@jmgattorneys.com
                                              nbilyeu@jmgattorneys.com

                                              Alexander A. Berengaut *(pro hac vice)*
                                              Megan A. Crowley *(pro hac vice)*
                                              COVINGTON & BURLING LLP
                                              850 Tenth Street, NW
                                              Washington, DC 20001
                                              (202) 662-5367
                                              aberengaut@cov.com
                                              mcrowley@cov.com

                                              *Attorneys for Consolidated Plaintiff*
                                              *TikTok Inc.*

30

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)**

I certify that this brief complies with the 6,500-word limit under Local Rule 7.1(d)(2)(A).  This computer-generated brief was prepared using Microsoft Word, and based on Microsoft Word's word count function, the total number of words in this brief, excluding caption, tables of contents and authorities, index of exhibits, signature block, and certificate of compliance is 6,499.

Dated:  July 5, 2023                              */s/ Rob Cameron*
                                                  Rob Cameron