Natasha Prinzing Jones
(MT Bar No. 5226)
Matthew B. Hayhurst
(MT Bar No. 4979)
BOONE KARLBERG P.C.
201 West Main St., Suite 300
P.O. Box 9199
Missoula, MT 59807
Telephone: (406) 543-6646
Facsimile: (406) 549-6804
npjones@boonekarlberg.com
mhayhurst@boonekarlberg.com

Ambika Kumar *(pro hac vice)*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 330
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
ambikakumar@dwt.com

Tim Cunningham *(pro hac vice)*
DAVIS WRIGHT TREMAINE LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299
timcunningham@dwt.com

*Attorneys for Plaintiffs Samantha Alario,
Heather DiRocco, Carly Ann Goddard, Alice
Held, and Dale Stout*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, HEATHER DIROCCO, CARLY ANN GODDARD, ALICE HELD, and DALE STOUT, <br><br> Plaintiffs, <br><br> v. <br><br> AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana, <br><br> Defendant. | Lead Case No. <br> 9:23-cv-00056-DWM <br> CV 23–56–M–DWM <br><br> Member Case No. <br> CV 23–61–M–DWM <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ...................................................................................2

    A.    TikTok Facilitates Communication Among Millions of Users. ...........2

    B.    TikTok's Unique Recommendation System Allows Creators to Reach a Substantial Audience and Generate Income...........................4

    C.    Montana Bans TikTok...........................................................................6

III.  LEGAL STANDARD ...........................................................................7

IV.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS..................8

    A.    SB 419 Violates The First Amendment. ...............................................8

        1.    SB 419 imposes an unconstitutional prior restraint. ..................8

        2.    SB 419's total ban is inherently overbroad...............................13

        3.    SB 419 fails strict scrutiny........................................................14

            a.    Strict scrutiny applies to SB 419. ...................................14

            b.    SB 419 fails strict or any level of scrutiny. ....................16

    B.    SB 419 Impermissibly Regulates Foreign Affairs. ............................20

        1.    SB 419 violates the Foreign Affairs Doctrine. .........................20

        2.    Federal law preempts SB 419. ..................................................22

            a.    IEEPA preempts SB 419. ...............................................22

            b.    Section 721 of the DPA preempts SB 419. .....................24

    C.    SB 419 Violates the Commerce Clause .............................................25

V.    THE REMAINING FACTORS FAVOR INJUNCTIVE RELIEF...............27

VI.   CONCLUSION....................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ...................................................26, 27

*Alexander v. United States*,
509 U.S. 544 (1993) ............................................................................8

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) ...........................................................8

*Arizona v. United States*,
567 U.S. 387 (2012) ....................................................................22, 24

*Arkansas Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987) ..........................................................................15

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ....................................................................16, 18

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ..........................................................................13

*Backpage.com, LLC v. Cooper*,
939 F. Supp. 2d 805 (M.D. Tenn. 2013) ..........................................26

*Backpage.com, LLC v. Hoffman*,
2013 WL 4502097 (D.N.J. Aug. 20, 2013) ......................................26

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) ........................................26

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ..................................................................9, 10, 11

*Bay Area Peace Navy v. United States*,
914 F.2d 1224 (9th Cir. 1990) .........................................................19

*Berger v. City of Seattle,*
    569 F.3d 1029 (9th Cir. 2009) ...........................................................................14

*Bibb v. Navajo Freight Lines, Inc.,*
    359 U.S. 520 (1959).........................................................................................26

*Bigelow v. Virginia,*
    421 U.S. 809 (1975).........................................................................................25

*Board of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.,*
    482 U.S. 569 (1987).........................................................................................14

*Brown v. Ent. Merchs. Ass'n,*
    564 U.S. 786 (2011)....................................................................................16, 17

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
    29 F.4th 468 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 1749 (2023) .............27, 28

*Carroll v. President & Comm'rs of Princess Anne,*
    393 U.S. 175 (1968).........................................................................................8, 11

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985).........................................................................................19

*City of Ladue v. Gilleo,*
    512 U.S. 43 (1994)..........................................................................................8, 13

*Craig v. Harney,*
    331 U.S. 367 (1947).........................................................................................10

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000)...............................................................................22, 23, 24

*CTS Corp. v. Dynamics Corp. of Am.,*
    481 U.S. 69 (1987)...........................................................................................25

*Doe v. Deschamps,*
    461 F. Supp. 682 (D. Mont. 1976)....................................................................26

*Doe v. Harris,*
    772 F.3d 563 (9th Cir. 2014) ...........................................................................15

*Elrod v. Burns*,
   427 U.S. 347 (1976).......................................................................................27

*Geo Grp., Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022) (en banc) ............................................................23

*Grosjean v. Am. Press Co.*,
   297 U.S. 233 (1936)........................................................................................9

*Hampton v. Wong*,
   426 U.S. 88 (1976).........................................................................................17

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ...................................................................15, 16

*IMDb.com, Inc. v. Becerra*,
   257 F. Supp. 3d 1099 (N.D. Cal. 2017),
   *aff'd*, 962 F.3d 1111 (9th Cir. 2020) ...............................................................11

*Interstate Circuit, Inc. v. City of Dallas*,
   390 U.S. 676 (1968)......................................................................................9, 11

*Iowa Pork Producers Ass'n v. Bonta*,
   2022 WL 1042561 (C.D. Cal. Feb. 28, 2022) ...................................................27

*Kalantari v. NITV, Inc.*,
   352 F.3d 1202 (9th Cir. 2003) ........................................................................22

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ........................................................................28

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978)........................................................................................10

*Lovell v. City of Griffin*,
   303 U.S. 444 (1938)........................................................................................14

*Marland v. Trump*,
   498 F. Supp. 3d 624 (E.D. Pa. 2020)...........................................................23, 27

*McConnell v. FEC*,
   540 U.S. 93 (2003)..........................................................................................9

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983) .................................................................................8, 15

*Mont. Chamber of Com. v. Argenbright*,
    28 F. Supp. 2d 593 (D. Mont. 1998), *aff'd*, 226 F.3d 1049 (9th Cir. 2000).......13

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) (en banc) ...................................................20, 21

*N.Y. Times Co. v. United States*,
    403 U.S. 713 (1971).................................................................................10, 11

*Nat'l Pork Producers Council v. Ross*,
    143 S. Ct. 1142 (2023).......................................................................................25

*Near v. Minnesota*,
    283 U.S. 697 (1931).............................................................................................9

*Neb. Press Ass'n v. Stuart*,
    427 U.S. 539 (1976).............................................................................................8

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) .........................................................................24

*Packingham v. North Carolina*,
    582 U.S. 98 (2017)...........................................................................1, 18, 20, 28

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)...........................................................................................25

*Project Veritas v. Schmidt*,
    -- F.4th --, 2023 WL 4308952 (9th Cir. July 3, 2023).......................................18

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017) ...............................................................28

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)......................................................................................14, 16

*Reno v. ACLU*,
    521 U.S. 844 (1997).......................................................................................9, 13

*Rosen v. Port of Portland*,
　　641 F.2d 1243 (9th Cir. 1981) ...............................................................11, 12, 13

*Se. Promotions, Ltd. v. Conrad*,
　　420 U.S. 546 (1975)..........................................................................................11

*Smith v. Daily Mail Publ'g Co.*,
　　443 U.S. 97 (1979)............................................................................................10

*Sorrell v. IMS Health Inc.*,
　　564 U.S. 552 (2011)..........................................................................................15

*Stanley v. Georgia*,
　　394 U.S. 557 (1969)..........................................................................................16

*TikTok Inc. v. CFIUS*,
　　No. 20-1444 (D.C. Cir. Feb. 21, 2023)............................................................24

*TikTok Inc. v. CFIUS*,
　　No. 20-1444 (D.C. Cir. Nov. 10, 2020)............................................................24

*TikTok Inc. v. Trump*,
　　490 F. Supp. 3d 73 (D.D.C. 2020)................................................................5, 23

*Time Warner Cable, Inc. v. Hudson*,
　　667 F.3d 630 (5th Cir. 2012) ...........................................................................15

*Turner Broad. Sys., Inc. v. FCC*,
　　512 U.S. 622 (1994)...................................................................................14, 19

*U.S. WeChat Users All. v. Trump*,
　　2020 WL 6891820 (N.D. Cal. Nov. 24, 2020) .................................................18

*U.S. WeChat Users All. v. Trump*,
　　488 F. Supp. 3d 912 (N.D. Cal. 2020)........................................................*passim*

*United States v. Playboy Entm't Grp.*,
　　529 U.S. 803 (2000)...................................................................................12, 16

*United States v. Stevens*,
　　559 U.S. 460 (2010)..........................................................................................13

vi

*Video Gaming Techs., Inc. v. Bureau of Gambling Control,*
356 F. App'x 89 (9th Cir. 2009) ..........................................................27

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
592 F.3d 954 (9th Cir. 2010) .........................................................20, 21

*Wauchope v. U.S. Dep't of State,*
985 F.2d 1407 (9th Cir. 1993) ............................................................16

*Where Do We Go Berkeley v. Cal. Dep't of Transp.,*
32 F.4th 852 (9th Cir. 2022) .............................................................7, 8

*Zepeda v. U.S. INS,*
753 F.2d 719 (9th Cir. 1983) ..............................................................28

**Statutes**

50 U.S.C. § 1621(a) ...............................................................................22

50 U.S.C. § 1622(a)(2) ..........................................................................22

50 U.S.C. § 1701 ...............................................................................2, 22

50 U.S.C. § 1702(a)(1)(A) ....................................................................22

50 U.S.C. § 4565 .....................................................................................2

50 U.S.C. § 4565(a)(4)(B)(i) .................................................................24

50 U.S.C. § 4565(b)(1)(A)-(B) ..............................................................24

50 U.S.C. § 4565(d) ...............................................................................24

**Regulations**

15 C.F.R. § 7.4 .........................................................................................6

**Executive Orders**

Protecting American's Sensitive Data from Foreign Adversaries, 86 Fed. Reg.
31,423 (June 11, 2021) (Executive Order 14034) ..............................23

Securing the Information & Communications Technology & Services Supply
Chain, 84 Fed. Reg. 22,689 (May 17, 2019) (Executive Order 13873)............23

## Other Authorities

Aaron Drapkin, *TikTok Extends Video Length Limit to 10 Minutes*, tech.co (Nov. 15, 2022) .........................................................................2

Alexandra Garfinkle, *TikTok: Are influencers panicking about bans? We asked three to weigh in*, Yahoo! Fin. (Jan. 19, 2023).....................................5

Anna P. Kambhampaty, *Securing the TikTok Vote*, N.Y. Times (Mar. 19, 2022) ...................................................................4

Cat Zakrzewski *et al.*, *As midterms loom, TikTok faces its next political test*, Wash. Post (Oct. 31, 2022)....................................................................4

Darrell M. West & Mishaela Robison, *TikTok bans won't guarantee consumer safety,* Brookings Inst. (Feb. 16, 2023).................................................12

Fran Beyer, *Mont. AG Knudsen to Newsmax: State Tik Tok Ban First of Its Kind*, Newsmax (Apr. 17, 2023)..........................................................6

Jaimie Ding, *TikTok has created small business success stories and fast-tracked American dreams*, Trib. News, published by Dallas News (Mar. 28, 2023) .......5

Josh Robin & Rachel Tillman, *Views to votes: Candidates employ TikTok to spread political message ahead of midterms*, Spectrum News (Sept. 22, 2022) ..........................................................4

Letter from Shou Zi Chew, CEO, TikTok to Sen. Marsha Blackburn et al. (June 30, 2022)....................................................13

Memorandum from Gov. Greg Gianforte on Prohibiting the Use of TikTok on State IT Infrastructure (Dec. 16, 2022).................................................12

Rodney Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 WIDENER L. REV. 1 (2023).............................................................10

TikTok, *Celebrating our thriving community of 150 million Americans* (Mar. 21, 2023), https://tinyurl.com/9x28fxb5....................................................3

TikTok, *Effects*, https://tinyurl.com/nypwfbh2 (last visited June 27, 2023)............2

TikTok, *How TikTok Recommends Videos #ForYou* (June 18, 2020), https://tinyurl.com/8nhhert3 ...................................................................5

TikTok, *Messaging and Notifications*, https://tinyurl.com/mvdy2krz (last visited June 27, 2023)...........................................................................3

TikTok, *Thanks a Billion!* (Sept. 27, 2021), https://tinyurl.com/4dfa5u3u..............3

TikTok, *User Safety*, https://tinyurl.com/4krewsdf (last visited July 3, 2023) .......12

Will Oremus, *Discord leak suggests China doesn't need TikTok to find U.S. secrets*, Wash. Post (Apr. 17, 2023) ................................................................12

# EXHIBIT LIST

|  | **Description** | **Page(s)** |
|---|---|---|
| Exhibit A | Declaration of Samantha Alario ..................................... | 3, 6, 26, 27 |
| Exhibit B | Declaration of Heather DiRocco .................................... | 3, 4, 5, 6, 20, 26, 27 |
| Exhibit C | Declaration of Carly Ann Goddard ............................... | 3, 5, 20, 26, 27 |
| Exhibit D | Declaration of Alice Held .............................................. | 3, 5, 27 |
| Exhibit E | Declaration of Dale Stout............................................... | 3, 4, 5, 20, 27 |
| Exhibit F | Declaration of Ambika Kumar....................................... | *passim* |

**Exhibits to the Declaration of Ambika Kumar**

|  |  |  |
|---|---|---|
| Exhibit 1 | Transcript of March 28, 2023 Montana House Judiciary Committee Hearing on SB 419 ...................................... | 1, 6, 7, 21 |
| Exhibit 2 | Aaron Drapkin, *TikTok Extends Video Length Limit to 10 Minutes*, tech.co (Nov. 15, 2022)............................. | 2 |
| Exhibit 3 | TikTok's support website describing *Effects* .................. | 2 |
| Exhibit 4 | TikTok's support website describing *Messaging and Notifications* ................................................................... | 3 |
| Exhibit 5 | TikTok, *Thanks a Billion!* (Sept. 27, 2021...................... | 3 |
| Exhibit 6 | TikTok, *Celebrating our thriving community of 150 million Americans* (Mar. 21, 2023) ............................... | 3 |
| Exhibit 7 | Cat Zakrzewski et al., *As midterms loom, TikTok faces its next political test*, Wash. Post (Oct. 31, 2022)........... | 4 |
| Exhibit 8 | Anna P. Kambhampaty, *Securing the TikTok Vote*, N.Y. Times (Mar. 19, 2022)............................................ | 4 |
| Exhibit 9 | Josh Robin & Rachel Tillman, *Views to votes: Candidates employ TikTok to spread political message ahead of midterms*, Spectrum News (Sept. 22, 2022)..... | 4 |
| Exhibit 10 | Main page of Montana State Senator Ken Bogner's TikTok account (@kenbogner) ..................................... | 4 |
| Exhibit 11 | Main page of Montana State Representative Zooey | 4 |

|  | Zephyr's TikTok account (@zoeandbehold) ................. | |
| Exhibit 12 | TikTok, *How TikTok Recommends Videos #ForYou* (June 18, 2020) .................................................... | 5 |
| Exhibit 13 | Alexandra Garfinkle, *TikTok: Are influencers panicking about bans? We asked three to weigh in.*, Yahoo! Fin. (Jan. 19, 2023) ............................................ | 5 |
| Exhibit 14 | Jaimie Ding, *TikTok has created small business success stories and fast-tracked American dreams*, Trib. News, published by Dallas News (Mar. 28, 2023) .................... | 5 |
| Exhibit 15 | Montana SB 419 .......................................... | 6, 7, 11, 16, 17, 20, 21 |
| Exhibit 16 | Fran Beyer, *Mont. AG Knudsen to Newsmax: State Tik Tok Ban First of Its Kind*, Newsmax (Apr. 17, 2023) ..... | 6, 21 |
| Exhibit 17 | Defendant's June 26, 2023 proposed discovery requests ................................................................. | 11 |
| Exhibit 18 | Will Oremus, *Discord leak suggests China doesn't need TikTok to find U.S. secrets*, Wash. Post (Apr. 17, 2023) ........................................................... | 12 |
| Exhibit 19 | Darrell M. West & Mishaela Robison, *TikTok bans won't guarantee consumer safety*, Brookings Inst. (Feb. 16, 2023) ......................................................... | 12 |
| Exhibit 20 | Memorandum from Gov. Greg Gianforte on Prohibiting the Use of TikTok on State IT Infrastructure (Dec. 16, 2022) ......................................... | 12 |
| Exhibit 21 | Montana SB 384 ........................................... | 12, 18 |
| Exhibit 22 | Letter from Shou Zi Chew, CEO, TikTok to Sen. Marsha Blackburn et al. (June 30, 2022) ....................... | 13 |
| Exhibit 23 | TikTok's support website describing *User Safety* ......... | 12 |
| Exhibit 24 | Petition for Review, *TikTok Inc. v. CFIUS*, No. 20-1444, ¶ 24 (D.C. Cir. Nov. 10, 2020) ............................... | 24 |
| Exhibit 25 | Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Feb. 21, 2023) .................................................. | 24 |

## I.    INTRODUCTION

The State of Montana has banned video-sharing app TikTok, shuttering an entire forum for communication.  When another state passed a less-sweeping social media ban, the Supreme Court invalidated it without dissent, holding the law "enact[ed] a prohibition unprecedented in the scope of First Amendment speech it burdens."  *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017).

SB 419 is more pernicious.  Thousands of Montanans—including ranchers, homemakers, students, veterans, and small business owners like Plaintiffs—rely on TikTok to express themselves, share ideas, and promote their endeavors.  The Attorney General admits social media is one of "the best way[s] … to get your free speech out there"[1] and has expressed doubts about SB 419's constitutionality. With good reason: SB 419 violates the First Amendment.

Although SB 419 purports to safeguard national security and protect children from dangerous content, Montana has no authority to enact laws advancing its own view of United States foreign policy or national security interests, nor may the State ban an entire medium based on perceptions that some speech shared through that medium is unsuitable for children.  Even if Montana could regulate *any* speech that users share through TikTok, SB 419 wields a sledgehammer when the First Amendment requires a scalpel.

---

[1] *See* Declaration of Ambika Kumar Ex. 1 (Transcript of March 28, 2023 Montana House Judiciary Committee Hearing on SB 419) at 17.

SB 419's constitutional defects are extraordinary. The law violates the First Amendment, as well as the Foreign Affairs Doctrine and Commerce Clause of the United States Constitution.  SB 419 is preempted by the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701 *et seq.*, and Section 721 of the Defense Production Act (DPA), 50 U.S.C. § 4565, which authorize the President and Committee on Foreign Investment in the United States (CFIUS)—not states—to address putative national security risks posed by foreign economic actors.

Plaintiffs bring this motion to avert the irreparable harm they will suffer from SB 419's impending enforcement.

## II.     BACKGROUND

### A.     TikTok Facilitates Communication Among Millions of Users.[2]

TikTok allows users to create, share, and watch videos up to ten minutes long[3] and provides them a palette of tools to amplify their expression, such as background music and filters.[4]  Depending on their age, users can comment on,

---

[2] This Motion refers to users who create and share videos as "creators," and to both creators and their audience as "users."

[3] Kumar Decl. Ex. 2 (Aaron Drapkin, *TikTok Extends Video Length Limit to 10 Minutes*, tech.co (Nov. 15, 2022), https://tinyurl.com/yzd448jc).

[4] *See* Kumar Decl. Ex. 3 (TikTok, *Effects*, https://tinyurl.com/nypwfbh2 (last visited June 27, 2023)).

like, and share videos; stream content live; and message each other.[5]  Creators post

videos on myriad topics, such as art, science, comedy, pets, cooking, music,

photography, travel and tourism, psychology, agriculture, politics, and current

events.  More than one billion people use TikTok each month,[6] including, as of

March 2023, over 150 million Americans.[7]

Plaintiff Carly Ann Goddard shares scenes of her life on a Montana ranch

and used TikTok to meet new people following a move from Florida.  Declaration

of Carly Ann Goddard ¶¶ 2, 4.  Plaintiff Alice Held posts videos from mountain-

climbing adventures, and "went 'viral'" when she shared her month-long

experience camping during the pandemic.  Declaration of Alice Held ¶ 3.  Plaintiff

Samantha Alario uses TikTok to promote her sustainable swimwear company and

learn about topics ranging from investing to fitness and holiday crafts.  Declaration

of Samantha Alario ¶¶ 5, 7.  Plaintiff Heather DiRocco connects with other

veterans to discuss issues such as mental health and suicide prevention.

Declaration of Heather DiRocco ¶ 8.  Plaintiff Dale Stout connects with and

supports a community of people from around the world, learns new ideas, and

---

[5]  *See* Kumar Decl. Ex. 4 (TikTok, *Messaging and Notifications*, https://tinyurl.com/mvdy2krz (last visited June 27, 2023)).

[6]  Kumar Decl. Ex. 5 (TikTok, *Thanks a Billion!* (Sept. 27, 2021), https://tinyurl.com/4dfa5u3u).

[7]  Kumar Decl. Ex. 6 (TikTok, *Celebrating our thriving community of 150 million Americans* (Mar. 21, 2023), https://tinyurl.com/9x28fxb5).

follows current events.  Declaration of Dale Stout ¶¶ 3-4, 7.

Stout is not alone.  Nearly thirty percent of all major-party U.S. Senate candidates have TikTok accounts, as do twenty percent of all major-party House candidates.[8]  Politicians use TikTok to reach young voters, activate new voters, and break out as candidates.[9]  For example, Montana State Senator Ken Bogner has a TikTok account (@kenbogner) that "[s]how[s] off the great state of Montana."[10] Montana State Representative Zooey Zephyr uses her account (@zoandbehold) to provide daily legislative updates.[11]

### B.    TikTok's Unique Recommendation System Allows Creators to Reach a Substantial Audience and Generate Income.

Many creators, including Plaintiffs, choose TikTok because it inspires users to explore new content, rather than focus primarily on "following" friends, family, celebrities, or influencers.   DiRocco Decl. ¶ 11.   TikTok's "For You" page

---

[8] *See* Kumar Decl. Ex. 7 (Cat Zakrzewski *et al.*, *As midterms loom, TikTok faces its next political test*, Wash. Post (Oct. 31, 2022), https://tinyurl.com/23m4dtu7).

[9] *See, e.g.*, Kumar Decl. Ex. 8 (Anna P. Kambhampaty, *Securing the TikTok Vote*, N.Y. Times (Mar. 19, 2022), https://tinyurl.com/mr3vrf2e); *see also id*. Ex. 9 (Josh Robin & Rachel Tillman, *Views to votes: Candidates employ TikTok to spread political message ahead of midterms*, Spectrum News (Sept. 22, 2022), https://tinyurl.com/3z3r54vh).

[10] *See* Kumar Decl. Ex. 10 (Ken Bogner (@kenbogner), TikTok (last visited June 27, 2023), https://www.tiktok.com/@kenbogner).

[11] *See* Kumar Decl. Ex. 11 (Zooey Zephyn (@zoeandbehold), TikTok (last visited June 27, 2023), https://www.tiktok.com/@zoandbehold).

provides a curated stream of new videos.[12]  Even little-known creators can gain

substantial "organic reach," exposing their content to viewers beyond their current

followers.[13]  As one analyst explained: "TikTok offers the broadest organic reach

of any of the channels right now."[14]

Plaintiffs have found greater success on TikTok than other social media

apps.  DiRocco has about ten times as many followers on TikTok (over 200,000)

than Instagram (23,500).  DiRocco Decl. ¶ 11.  Goddard has over 101,000

followers on TikTok and 157 followers on YouTube.  Goddard Decl. ¶ 9.  Held has

over 216,000 followers on TikTok and about 7,000 on Instagram.  Held Decl. ¶ 5.

Stout has stopped posting on Instagram in favor of TikTok.  Stout Decl. ¶ 8.

Many Montanans, including several Plaintiffs, rely on income generated on

TikTok.  For example, Goddard roughly tripled her family's income through

TikTok.  Goddard Decl. ¶ 7.  SB 419 has prompted Goddard and her husband to

stall major life decisions, including having more children.  *See id.* ¶ 8.  DiRocco

generates ten to thirty percent of her income from TikTok content.  DiRocco Decl.

---

[12] *See* Kumar Decl. Ex. 12 (TikTok, *How TikTok Recommends Videos #ForYou* (June 18, 2020), https://tinyurl.com/8nhhert3).

[13] Kumar Decl. Ex. 13 (Alexandra Garfinkle, *TikTok: Are influencers panicking about bans? We asked three to weigh in.*, Yahoo! Fin. (Jan. 19, 2023), https://tinyurl.com/22h7rtvx).

[14] Kumar Decl. Ex. 14 (Jaimie Ding, *TikTok has created small business success stories and fast-tracked American dreams*, Trib. News, published by Dallas News (Mar. 28, 2023), https://tinyurl.com/3j4rzyxw).

¶ 7.  Alario has seen her local business grow.  Alario Decl. ¶¶ 5-6.

### C.      Montana Bans TikTok.

Scheduled to take effect January 1, 2024, SB 419 bans TikTok in Montana. *See* S.B. 419, 2023 Leg., 68th Sess. (Mont. 2023) (SB 419) §§ 1, 5.[15]  It imposes a $10,000 fine on TikTok and app stores each time a user accesses TikTok, and $10,000 more each day the violation continues.  *Id.* §§ 1(2), 7(a)-(b).

The Legislature—without citing evidence—identified two interests purportedly justifying the law.  First, SB 419 will ostensibly protect Montanans from "the People's Republic of China" and "Chinese Communist Party" because TikTok purportedly enables those entities "to conduct corporate and international espionage."  *Id.* at 2; *see also id.* § 4 (law void if TikTok "is acquired by or sold to a company that is not incorporated in any other country designated as a foreign adversary in 15 C.F.R. [§] 7.4").[16]  In legislative testimony, the Attorney General claimed China uses TikTok to "spy on Americans," and he supported the law because "there's no guarantee that the feds are actually going to act here."[17]

---

[15] Kumar Decl. Ex. 15.

[16] Section 7.4 lists these "adversaries," which include China, Cuba, Iran, North Korea, Russia, and Venezuela.  15 C.F.R. § 7.4(a)(1)-(6).

[17] *See* Kumar Decl. Ex. 1 at 14-15; *see also id.* at 28 (SB 419 author claiming Montana needs "to send a message to other states and to Congress"); *id.* Ex. 16 (Fran Beyer, *Mont. AG Knudsen to Newsmax: State Tik Tok Ban First of Its Kind*, Newsmax (Apr. 17, 2023), https://tinyurl.com/2udczzm6) (Attorney General states "pushing back against the Chinese communist government" is "what this is

6

Second, TikTok allegedly hosts "dangerous content" that supposedly encourages "minors to engage in dangerous activities." SB 419 at 1. Asked to address what "ou[r] kids" are "exposed to on TikTok," the Attorney General described alleged examples of such content.[18]

The State plans to enforce SB 419 once it takes effect, even though the Attorney General admits "from a legal standpoint…"the Act is "unprecedented" and may require "the U.S. Supreme Court to weigh in" on its "full legal implications."[19]

## III.   LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction if "(1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). These factors are weighed on a "sliding scale." *Id.* Where "the balance of hardships tips sharply in their favor,

---

about"); *id.* Ex. 1 at 8 (claiming TikTok is a "propaganda tool" for the Chinese Communist Party).

[18] *Id.* Ex. 1 at 13-14; *see also, e.g.*, *id.* at 5 (claiming TikTok shows you more depressing videos "[i]f you're depressed"); *id.* at 8 (claiming TikTok is a "propaganda tool" for the Chinese Communist Party).

[19] *Id.* at 17, 28.

PLS.' MEM. OF LAW IN SUPPORT OF MOT. FOR PRELIM. INJ.
Case No. 9:23-cv-00056-DWM

there is a likelihood of irreparable injury, and the injunction is in the public interest," plaintiffs "need only show 'serious questions' on the merits." *Id*.

## IV.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

### A.    SB 419 Violates The First Amendment.

SB 419 bans a global medium of communication used by over a billion people.  The law demands First Amendment scrutiny because it "singl[es] out" a means of expression, *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581 (1983), and "because regulation of a medium inevitably affects communication itself," *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994); *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062-63 (9th Cir. 2010).  SB 419 is invalid because it imposes an impermissible prior restraint; categorically bans protected speech; and bans speech on a medium-, content-, and speaker-basis.  Each of these features renders the law invalid.

### 1.    SB 419 imposes an unconstitutional prior restraint.

A prior restraint "forbid[s] certain communications" before they "occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted).  Prior restraints imperil "the precise freedom" the First Amendment protects, *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968), present "the most serious and the least tolerable infringement on First Amendment rights," and bear a "heavy presumption against" their "constitutional validity," *Neb. Press*

*Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976) (citation omitted).

SB 419 imposes a quintessential prior restraint.   It even more broadly restrains speech than the invalidated order in *Near v. Minnesota*, 283 U.S. 697, 703-05 (1931), which enjoined publication of a single newspaper, or the impermissible law in *Grosjean v. American Press Co.*, 297 U.S. 233, 240-41, 249-51 (1936), which subjected "a selected group of newspapers" to a special tax.   SB 419 shuts down an entire forum for speech.   *See, e.g.*, *U.S. WeChat Users All. v. Trump*, 488 F. Supp. 3d 912, 926 (N.D. Cal. 2020) ("*WeChat I*") (enjoining ban on Chinese-owned communications app since it threatened the "censorship of speech or a prior restraint on it").   The harms here are amplified because TikTok, as a digital forum, permits Plaintiffs to "become a town crier with a voice that resonates farther than it could from any soapbox."   *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

It makes no difference that SB 419 exempts individual users from liability. "Control any cog in the machine, and you can halt the whole apparatus. License printers, and it matters little whether authors are still free to write. Restrict the sale of books, and it matters little who prints them."   *McConnell v. FEC*, 540 U.S. 93, 251 (2003) (Scalia, J., concurring in part and dissenting in part).   Courts "look through forms to the substance" to "recognize" and enjoin "informal censorship." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963); *see also Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 688 (1968) (prior restraint does not always

involve "direct suppression").  In *Bantam Books*, the Supreme Court held that Rhode Island subjected publishers to a prior restraint by requiring booksellers to submit titles to an administrative board before offering them to the public, 372 U.S. at 64 n.6, even though nothing prohibited booksellers from selling the books, *id.* at 66-67.  Such "indirect" methods "of coercion, persuasion, and intimidation" accomplished the "obviously intended" result of curtailing publishers' circulation. *Id.* at 64 n.6, 67.  SB 419 even more clearly accomplishes this result, subjecting users to a prior restraint by banning TikTok altogether.

SB 419 does not survive "the most exacting scrutiny" applicable to prior restraints, *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979), which requires showing the Act is the *only* means to address a "direct, immediate, and irreparable" interest of the highest magnitude.  *N.Y. Times Co. v. United States*, 403 U.S. 713, 730 (1971) ("*Pentagon Papers*") (Stewart, J., concurring); *id.* at 726-27 (Brennan, J., concurring) (same); *see also* Rodney Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 WIDENER L. REV. 1, 6-7 (2023) (prior restraints subject to standard "even more rigorous than strict scrutiny").  Seeking to avert "even probable" danger is not enough.  *Craig v. Harney*, 331 U.S. 367, 376 (1947).  A "solidity of evidence" must show the danger "immediately imperil[s]."  *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 845 (1978) (citations omitted).  Even then, the restraint must be "couched in the

10

narrowest terms" and "essential" to "accomplish [its] pin-pointed objective." *Carroll*, 393 U.S. at 183.   "Any 'prior restraint,' therefore, must be held unconstitutional, unless no other choice exists."   *Rosen v. Port of Portland*, 641 F.2d 1243, 1250 (9th Cir. 1981).

Montana cannot satisfy this standard.   Its alleged desire to prevent circulation of undefined "dangerous content," SB 419 at 1—by only one service— is insufficient.  *See Bantam Books*, 372 U.S. at 66-67, 70-71, *Interstate Circuit*, 390 U.S. at 678-88; *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (invalidating similar restraints purported to protect children); *see also infra* § IV.A.3.b (explaining why this justification fails any level review).   Nor can "national security" justify the law.   No state may pursue the nation's security interests, *see infra* § IV.B, and in any event, Montana has no evidence that permitting communication through TikTok would "inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea."  *Pentagon Papers*, 403 U.S. at 726-27 (Brennan, J., concurring).   In fact, the State has proposed taking discovery from TikTok,[20] in the "hope a justification materializes in discovery." *IMDb.com, Inc. v. Becerra*, 257 F. Supp. 3d 1099, 1102 (N.D. Cal. 2017) (government may not regulate speech and "go fishing for a justification" later), *aff'd*, 962 F.3d 1111, 1127-28 (9th Cir. 2020).

---

[20] Kumar Decl. Ex. 17 (Defendant's June 26, 2023 proposed discovery requests).

Even government documents indicate China "doesn't need TikTok to find U.S. secrets."[21]

Nor is banning TikTok Montana's "only" choice to serve its asserted interests. *Rosen*, 641 F.2d at 1250. To mitigate alleged risks to children, Montana could require services to provide tools giving parents greater control over what their children see, building on tools TikTok already provides.[22] *See, e.g.*, *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 816 (2000) (allowing parent to "request" to block certain content was "less restrictive alternative"). To address purported national security concerns, Montana could rely on its existing prohibition of TikTok on government devices,[23] enforce the general data-privacy rules it just enacted,[24] or support federal efforts to have TikTok house protected

---

[21] Kumar Decl. Ex. 18 (Will Oremus, *Discord leak suggests China doesn't need TikTok to find U.S. secrets*, Wash. Post (Apr. 17, 2023), https://tinyurl.com/bdecw5xx); *see also id.* Ex. 19 (Darrell M. West & Mishaela Robison, *TikTok bans won't guarantee consumer safety*, Brookings Inst. (Feb. 16, 2023), https://tinyurl.com/bdhrmeew) ("foreign entities can purchase" information from data brokers).

[22] *See* Kumar Decl. Ex. 23 (TikTok, *User Safety*, https://tinyurl.com/4krewsdf (last visited July 3, 2023)).

[23] *See* Kumar Decl. Ex. 20 (Memorandum from Gov. Greg Gianforte on Prohibiting the Use of TikTok on State IT Infrastructure (Dec. 16, 2022), https://tinyurl.com/h88rtv8m).

[24] Kumar Decl. Ex. 21 (Montana SB 384 (May 19, 2023)).

12

data in the United States.[25]   Since these "choice[s] exist[]," SB 419 fails the scrutiny applicable to prior restraints.  *Rosen*, 641 F.2d at 1250.

### 2.   SB 419's total ban is inherently overbroad.

SB 419 separately violates the First Amendment because it is overbroad. The Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).  A law is "overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted).  The "special attributes of Internet communication" require robust application of the doctrine.  *Reno*, 521 U.S. at 863 (citation omitted).

SB 419's ban is overbroad because it "foreclose[s] an entire medium of expression," even if that expression is protected.  *City of Ladue*, 512 U.S. at 56; *see also Mont. Chamber of Com. v. Argenbright*, 28 F. Supp. 2d 593, 594 (D. Mont. 1998) ("total prohibition" on corporate contributions to ballot initiatives "overbroad") (cleaned up), *aff'd*, 226 F.3d 1049 (9th Cir. 2000). It does not "merely shift the time, place, or manner" of a medium's "use," but shuts down all speech through that medium at all times, in all places, and by all manners.  *City of*

---

[25] *See, e.g.*, Kumar Decl. Ex. 22 (Letter from Shou Zi Chew, CEO, TikTok to Sen. Marsha Blackburn et al. (June 30, 2022), https://tinyurl.com/2p8mz6fs).

*Ladue*, 512 U.S. at 56, 58-59 (enjoining sign ban on other grounds).

The Supreme Court has twice invalidated similar bans.  In *Lovell v. City of Griffin*, 303 U.S. 444, 451 (1938), the Court held impermissible an ordinance banning "every sort of circulation" of printed material within a city's limits.  In *Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574-75 (1987), the Court enjoined a "sweeping ban" on all "First Amendment activities" at Los Angeles International Airport, even though plaintiffs could have distributed pamphlets anywhere else in Los Angeles.  SB 419 similarly bans all speech of any kind through a single forum.  *See Berger v. City of Seattle*, 569 F.3d 1029, 1056 (9th Cir. 2009) (en banc) (ordinance "prohibiting all 'speech activities'" within single park overbroad).  It is equally invalid.

### 3.    SB 419 fails strict scrutiny.

In addition to these defects, SB 419 is a medium-, speaker-, and content-based regulation of speech that triggers and fails strict scrutiny.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163-64, 168-69 (2015).

### a.    Strict scrutiny applies to SB 419.

SB 419 is subject to strict scrutiny for three independent reasons.

First, the law singles out a medium of expression for the most extreme form of disfavor, a ban, "reflect[ing] the Government's … aversion" to TikTok and its users.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("*Turner I*").

14

This "differential treatment" makes SB 419 "presumptively unconstitutional." *Minneapolis Star*, 460 U.S. at 598 (citation omitted); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-65, 568 (2011). Thus in *Minneapolis Star*, the Supreme Court applied strict scrutiny to a law "target[ing] individual publications" for special taxation.  460 U.S. at 585, 592-93.  So too, in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987), strict scrutiny applied to a "selective" tax regime that "singl[ed] out" and "target[ed] individual" media outlets.  *Id.* at 231, 234 (citing *Minneapolis Star*, 460 U.S. at 592-93).  The availability of "other means" to communicate made no difference.  *Id.* at 231 (citation omitted); *see also Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 638-41 (5th Cir. 2012) (applying strict scrutiny to law targeting "small handful" of cable providers).  SB 419 is even more pernicious because it targets *one* forum. *See Doe v. Harris*, 772 F.3d 563, 575 (9th Cir. 2014) (laws banning speech for "a category of speakers" subject to strict scrutiny) (citing *Citizens United v. FEC*, 558 U.S. 310, 339-41 (2010)).

Second, strict scrutiny applies because SB 419 "singles out particular content for differential treatment."  *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (citation omitted).  Like California's attempt to ban a website from publishing certain user-sourced and user-generated information, SB 419 "prohibits the dissemination of one type of speech," TikTok videos, from "a single

category of speakers," TikTok creators. *Id.* SB 419's attempt to prevent dissemination of allegedly "dangerous content" to "minors" also demonstrates its content basis. SB 419 at 1. Any law "designed to protect minors from viewing harmful materials" is "content-based" and subject to strict scrutiny. *Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004); *see also Reed*, 576 U.S. at 163-64.

Third, SB 419 abridges Montanans' right to "receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). "[S]trict scrutiny normally applie[s]" to laws "implicating such a right." *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1413 (9th Cir. 1993) (citation omitted).

**b.    SB 419 fails strict or any level of scrutiny.**

A speech regulation subject to strict scrutiny is "rare[ly]" "permissible," *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (citation omitted), as the government must prove the law is necessary to and "the least restrictive means" of achieving a compelling state interest, *Playboy*, 529 U.S. at 813 (citation omitted). "[I]f a less restrictive alternative would serve the Government's purpose, the legislature must use [it]." *Id.*

Montana has not shown compelling interests, let alone that SB 419 is necessary to achieve them. The State has no authority to regulate national security. *See infra* § IV.B. Moreover, SB 419 rests on naked conclusions that banning TikTok would prevent the app from "shar[ing]" data "with the Chinese Communist

16

Party" and deny "the People's Republic of China" the ability to "conduct corporate and international espionage in Montana." SB 419 at 1-2. This unsupported "predictive judgment" fails to establish a "direct causal link between" banning TikTok and obstructing Chinese intelligence gathering. *Brown*, 564 U.S. at 799. Evidence—including leaked U.S. intelligence—indicates that China can access Americans' data through other means, regardless. *See, e.g.*, Oremus, *supra*, and West and Robison, *supra*.

The State also cannot show banning TikTok is necessary to shield minors from "dangerous content." SB 419 at 1-2. The Supreme Court rejected similar conjecture in *Brown*, 564 U.S. at 799-804, despite studies "purport[ing] to show a connection between exposure to violent video games and harmful effects on children." Montana does not even attempt to present similar evidence, nor any basis to conclude that exposure to content on TikTok is causally significant or distinguishable "from effects produced by other media." *Id.* at 800-02. Indeed, Montana's professed concern for children appears pretextual, as the law would permit consumption of the *same* "dangerous" content so long as a "foreign adversary" does not own the app. *See Hampton v. Wong*, 426 U.S. 88, 103 (1976) (heightened scrutiny "requires that there be a legitimate basis for presuming that the rule was actually intended to serve that interest").

SB 419 is also not the least restrictive alternative to achieve its putative

objectives.  Many alternatives would "allow the continued use of the platform." *U.S. WeChat Users All. v. Trump*, 2020 WL 6891820, at \*8 (N.D. Cal. Nov. 24, 2020) (denying stay of preliminary injunction barring ban of China-based WeChat app).  For example, Montana could rely on its law banning TikTok on government devices.  *See, e.g.*, *WeChat I*, 488 F. Supp. 3d at 927  ("barring WeChat from government devices" less restrictive than banning WeChat).  Or it could enforce its new data privacy law,[26] which restricts information collection and sharing.  As for "dangerous" content, Montana could require social media companies to incorporate parental controls, such as the Family Pairing and Restricted Mode features that TikTok already offers.   *Ashcroft*, 542 U.S. at 669 ("parental cooperation" a "less restrictive alternative").

SB 419 would fail even intermediate scrutiny, which requires a regulation "serve a 'legitimate' government interest" and "not burden substantially more speech than is necessary to further" that interest.  *Packingham*, 582 U.S. at 105-06, 111 (citations omitted); *see also, e.g.*, *Project Veritas v. Schmidt*, -- F.4th --, 2023 WL 4308952, at \*13 (9th Cir. July 3, 2023) (law "foreclos[ing] an entire medium of public expression" failed intermediate scrutiny since "[r]egulations may not hamper a speaker's preferred mode of communication to such an extent that they compromise or stifle the speaker's message") (citations omitted)  Laws like SB

---

[26] Kumar Decl. Ex. 21 (SB 384).

419—which pursue *no* "legitimate state interests"—fail even rational basis review. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985).   Further, Montana has not shown the alleged national security harms "are real, not merely conjectural, and that" SB 419 "will in fact alleviate these harms in a direct and material way." *Turner I*, 512 U.S. at 664.   "[S]peculation" is insufficient since "the government's restriction of First Amendment expression" could otherwise "become essentially unreviewable." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1228-29 (9th Cir. 1990) (affirming injunction over such speculation).

For example, in *WeChat I*, a court enjoined an executive order banning a Chinese-owned communications platform because, even under intermediate scrutiny, the government presented "little evidence" that the ban served any national security objective.   488 F. Supp. 3d at 927.   The court held that the ban "burden[ed] substantially more speech than is necessary to serve" the *federal* government's "significant interest in national security" given the "obvious alternatives to a complete ban." *Id.* at 927-28.   The court also credited declarations that other social media platforms were inadequate alternative "channels for communication," such that banning WeChat "effectively eliminate[d] the plaintiffs' key platform for communication." *Id.* at 926-28.

Montana's attempt to ban TikTok is even more constitutionally suspect. Montana has no valid interest in foreign affairs and no evidence that SB 419 will

19

help achieve its purported aims, whereas publicly available evidence shows the ban will suppress swaths of protected speech and "eliminate" a "key platform for communication." *Id.* at 927; *see also* DiRocco Decl. ¶¶ 8-10; Stout Decl. ¶¶ 3-4; Goddard Decl. ¶¶ 4-6. "[N]o case or holding … has approved of a statute as broad in its reach." *Packingham*, 582 U.S. at 108.

### B.    SB 419 Impermissibly Regulates Foreign Affairs.

SB 419 also intrudes on the federal government's foreign affairs power and is preempted by IEEPA and Section 721 of the DPA.

### 1.    SB 419 violates the Foreign Affairs Doctrine.

A state "violate[s] the Constitution by establishing its own foreign policy." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 964 (9th Cir. 2010) (citation omitted). This is true "even when the federal government has taken no action on a particular" issue. *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012) (en banc). A state law usurps the federal government's exclusive authority over foreign affairs when (i) its "real purpose" does not concern an area of traditional state responsibility and (ii) it has "more than some incidental or indirect effect" on foreign affairs. *Id.* at 1074-76.

SB 419 fails both prongs. SB 419's "real purpose" is to regulate U.S. relations with China—not a traditional state responsibility. SB 419 seeks to interdict purported "international espionage" by a "foreign adversary." SB 419 at

1-2 & § 4.  To do this, it singles out TikTok based on the company's suspected ultimate Chinese ownership.  *Id.*  The Act states "the People's Republic of China is an adversary of the United States and Montana"; "a Chinese corporation" owns TikTok; China "can direct the company to share user information"; and "TikTok's continued operation in Montana" "may allow" China to spy on "individuals adverse to the Chinese Communist Party's interests."  *Id.* at 1-2.  SB 419 is "*not a neutral law of general application*" but a targeted effort to address foreign relations with a single nation.  *Movsesian*, 670 F.3d at 1075.  Montana can make "no serious claim to be addressing a traditional state responsibility."  *Von Saher*, 592 F.3d at 965 (quoting *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003)).

SB 419 has more than an "incidental" or "indirect" effect on foreign affairs.  *Movsesian*, 670 F.3d at 1076 (quoting *Zschernig v. Miller*, 389 U.S. 429, 434 (1968)).  In *Movsesian*, the Ninth Circuit found a law providing redress for "Armenian Genocide victim[s]" directly impacted foreign affairs because it "expresse[d] a distinct point of view on a specific matter of foreign policy" and was "intended to send a political message."  *Id.* at 1077.  Here too, SB 419 reflects Montana's view that banning TikTok addresses alleged Chinese espionage, and proponents admit it was designed to "send a message … to Congress"[27]

---

[27] Kumar Decl. Ex. 1 at 28; *see also id.* Ex. 16 ("pushing back against the Chinese communist government" is "what this is about").

Meanwhile, the federal government is negotiating to mitigate any national security risks short of banning TikTok. *See infra* § IV.C.2.

### 2. Federal law preempts SB 419.

"[S]tate laws are preempted when they conflict with federal law[,]" *Arizona v. United States*, 567 U.S. 387, 399 (2012), i.e., where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citation omitted). Courts make this decision "by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.*

SB 419 is preempted because it frustrates the policies reflected in IEEPA and Section 721 of the DPA.

### a. IEEPA preempts SB 419.

IEEPA grants the President authority to "investigate, regulate, or prohibit" certain economic transactions upon declaring an emergency based on a perceived foreign threat. 50 U.S.C. §§ 1701, 1702(a)(1)(A); *see also id.* §§ 1621(a) & 1622(a)(2) (permitting President to terminate emergencies). To avoid First Amendment concerns, IEEPA prohibits the President from "regulat[ing] or prohibit[ing], directly or indirectly," any "personal communication" or the importation or exportation "of any information or informational materials," "regardless of format or medium of transmission." *Kalantari v. NITV, Inc.*, 352

22

F.3d 1202, 1205 (9th Cir. 2003) (quoting 50 U.S.C. § 1702(b)).

SB 419 conflicts with IEEPA. *Id.* "[I]nterference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022) (en banc); *Crosby*, 530 U.S. at 388 (state regulating trade with Burma conflicted with federal law granting President similar authority). SB 419 interferes with the President's discretion to respond to foreign threats, which he has already exercised in choosing *not* to ban TikTok. *See* Securing the Information & Communications Technology & Services Supply Chain, 84 Fed. Reg. 22,689 (May 17, 2019) (Executive Order 13873 declaring emergency with respect to foreign adversaries using "information and communications technology and services" to "commit … industrial espionage"); Protecting American's Sensitive Data from Foreign Adversaries, 86 Fed. Reg. 31,423 (June 11, 2021) (Executive Order 14034 expanding Executive Order 13873, revoking prior order banning TikTok, directing alternative actions).

SB 419 also exceeds the "specific range" of even permissible federal regulations by regulating "conduct that Congress has explicitly exempted." *Crosby*, 530 U.S. at 377-78. While IEEPA prohibits the President from restricting the flow of personal communications and informational materials, including content exchanged on TikTok—*Marland v. Trump*, 498 F. Supp. 3d 624, 636-37 (E.D. Pa. 2020); *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 81 (D.D.C. 2020)—SB

23

419 does exactly that.  *See Arizona*, 567 U.S. at 406 (holding preempted law that imposed penalties for conduct Congress did not punish).  It thus presents an obstacle to federal policies embodied in IEEPA.

### b.    Section 721 of the DPA preempts SB 419.

Section 721 authorizes CFIUS to assess the national security impact of foreign acquisitions of U.S. businesses, and mitigate risks through conditions. 50 U.S.C. §§ 4565(b)(1)(A)-(B) & 4565(a)(4)(B)(i).  If risks cannot be mitigated, the President may prohibit the transaction.  *Id.* § 4565(d).

Through CFIUS, the federal government and TikTok, as well as its parent company, ByteDance Ltd., have been negotiating possible conditions to mitigate any purported national security risk regarding TikTok user data.[28]  SB 419 obstructs these efforts.  The federal government's "maximum power to persuade" comes from its "capacity to bargain for the benefits of access to the entire national economy."  *Crosby*, 530 U.S. at 381.  When states become "enclaves fenced off willy-nilly by inconsistent political tactics," that power diminishes.  *Id.*; *see, e.g.*, *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1285 (11th Cir. 2013) (preempting law creating "enclave that the President can no longer offer in bargaining with Cuba") (citation omitted).  SB 419 is preempted for this reason,

---

[28] *See* Kumar Decl. Ex. 24 (Pet. for Rev., *TikTok Inc. v. CFIUS*, No. 20-1444, ¶ 24 (D.C. Cir. Nov. 10, 2020)); *id*. Ex. 25 (Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Feb. 21, 2023)).

as well.

### C.    SB 419 Violates the Commerce Clause

State laws that impede the flow of commerce through interstate channels violate the Commerce Clause when their burdens are "clearly excessive in relation to the[ir] putative local benefits." *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970); *see Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1158 n.2 (2023) ("state regulations on instrumentalities" of interstate commerce impermissible "when a lack of national uniformity would impede the flow" of interstate commerce) (citation & emphasis omitted).  States cannot, for example, regulate the lengths of railcars or mandate the types of mudflaps for semitrucks, requiring shippers or passengers to change modalities before crossing borders. *Ross*, 143 S. Ct. at 1158 n.2 (citing cases).  So, too, internet services "are in their nature national" and "admit only of one uniform system, or plan of regulation." *CTS Corp. v. Dynamics Corp. of Am*., 481 U.S. 69, 88-89 (1987) (citation omitted). SB 419 not only impedes but *cuts off* an instrument for interstate commerce without advancing any adequate (let alone legitimate) local interest.

SB 419's burden on commerce is obvious.  By cutting off Montanans from an instrument of interstate commerce and communication, the Act restricts the distribution of information across state lines.  *Cf. Bigelow v. Virginia*, 421 U.S. 809, 822-29 (1975) (state "may not, under the guise of exercising internal police

powers, bar a citizen of another State from disseminating information"); *e.g., Doe v. Deschamps,* 461 F. Supp. 682, 688-89 (D. Mont. 1976) (enjoining part of similar law); *see also, e.g., ACLU v. Johnson*, 194 F.3d 1149, 1162-63 (10th Cir. 1999) (enjoining law barring "dissemination" of "harmful" materials online); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1286 (W.D. Wash. 2012) (enjoining law barring illicit online ads); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 844-45 (M.D. Tenn. 2013) (same); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *11-12 (D.N.J. Aug. 20, 2013) (same).   Worse than regulating mudflaps, SB 419 is akin to a law banning *all* semitrucks.   Although a Montanan could still send and receive shipments by smaller trucks or trains, they would need to "shift … cargo to differently designed vehicles once another state line was reached."   *Bibb v. Navajo Freight Lines, Inc*., 359 U.S. 520, 526 (1959).

SB 419's burden clearly exceeds any "putative local benefits," as the State provides no evidence the law has *any* salutary effects.   *See supra* § IV.A.3.b.   The record is, however, replete with evidence of harm.   *Cf.* Goddard Decl. ¶ 8 ("My family has come to rely on" TikTok income "for our daily necessities, such as food, clothes, and doctor's visits."); Alario Decl. ¶ 6 ("I rely on TikTok to help keep my business afloat and provide for my two children."); DiRocco Decl. ¶ 12 ("If Montana's TikTok ban was allowed to take effect, I would lose access to this incredible community that I have built over the past five years.").   The State's

unsupported assertions cannot overcome the law's "extreme burden on interstate commerce." *Johnson*, 194 F.3d at 1162 (citation omitted).

## V.      THE REMAINING FACTORS FAVOR INJUNCTIVE RELIEF

Plaintiffs will suffer irreparable harm absent an injunction. SB 419 will shutter Plaintiffs' preferred forum for expression; this "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) ("colorable First Amendment claim" shows irreparable injury) (citation omitted), *cert. denied*, 143 S. Ct. 1749 (2023); *see also, e.g.*, *Marland*, 498 F. Supp. 3d at 641-42; Stout Decl. ¶ 10; DiRocco Decl. ¶¶ 12-14; Alario Decl. ¶ 8; Held Decl. ¶ 7; Goddard Decl. ¶ 10. Plaintiffs will also suffer irreparable economic harm, Goddard Decl. ¶ 7, DiRocco Decl. ¶ 12, as even purely "monetary injuries may be irreparable" where, as here, sovereign immunity would bar recovery of those damages. *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 93 (9th Cir. 2009); *e.g.*, *Iowa Pork Producers Ass'n v. Bonta*, 2022 WL 1042561, at *15 (C.D. Cal. Feb. 28, 2022); *Marland*, 498 F. Supp. 3d at 641-42 ("Plaintiffs' significant and unrecoverable economic loss caused by the shutdown of the TikTok platform is an irreparable harm[.]").

Equity and the public interest also support an injunction because Montana "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983). The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles," *Cal. Chamber of Com.*, 29 F.4th at 482 (citation omitted), particularly when, as here, "enforcement" "would infringe not only the free expression interests of plaintiffs, but also the interests of other people subjected to the same restrictions," *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (citation omitted). SB 419 will prohibit protected speech and deny access to a vital forum "integral to the fabric of our modern society and culture." *Packingham*, 582 U.S. at 109. "[E]quities and the public interest" "tip sharply" in favor of an injunction. *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1028 (E.D. Cal. 2017) (citation omitted).

## VI. CONCLUSION

Plaintiffs respectfully request an order enjoining SB 419 in its entirety.

DATED: July 5, 2023

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ambika Kumar*
Ambika Kumar
Tim Cunningham

BOONE KARLBERG P.C.

By: */s/ Natasha Prinzing Jones*
Natasha Prinzing Jones

28

Matthew Hayhurst

*Attorneys for Plaintiffs Samantha
Alario, Heather DiRocco, Carly Ann
Goddard, Alice Held, and Dale Stout*

PLS.' MEM. OF LAW IN SUPPORT OF MOT. FOR PRELIM. INJ.
Case No. 9:23-cv-00056-DWM

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 7.1(d)(2)(E), Local Rules of the United States District Court, District of Montana, I hereby certify that the textual portion of the foregoing brief uses a proportionally spaced Times New Roman typeface of 14 points, is double-spaced, and contains approximately 6,489 words, excluding the parts of the brief exempted by L.R. 7.1(d)(2)(E).

DATED this 5th day of July, 2023.

DAVIS WRIGHT TREMAINE LLP

By:  */s/ Ambika Kumar*
        Ambika Kumar
        Tim Cunningham

BOONE KARLBERG P.C.

By: */s/ Natasha Prinzing Jones*
        Natasha Prinzing Jones
        Matthew Hayhurst

*Attorneys for Plaintiffs Samantha Alario, Heather DiRocco, Carly Ann Goddard, Alice Held, and Dale Stout*

1