## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, *et al.*, | |
| *Plaintiffs,* | |
| and | Civil Action Nos. |
| | 9:23-cv-00056-DWM |
| TIKTOK INC., | 9:23-cv-00061-DWM |
| *Consolidated Plaintiffs,* | |
| v. | |
| AUSTIN KNUDSEN, in his official capacity as Attorney General of Montana, | |
| *Defendant.* | |

### THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION'S UNOPPOSED MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

## INTRODUCTION

The State of Montana has enacted a law, SB 419, banning all entities from offering or providing the app TikTok in the State. SB 419 not only restricts TikTok itself, but also imposes massive penalties on mobile application stores ("app stores") that make TikTok available for download in the State. Unless SB 419 is enjoined, app stores that offer TikTok for download will be liable for $10,000 in penalties for each person who has access to the store in Montana for every day that TikTok is available.

Movant Computer & Communications Industry Association ("CCIA") is a trade association that represents companies offering information and communications technology products and services, including companies with app stores subject to SB 419. TikTok is not a member of CCIA.[1]  For more than 50 years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. CCIA has a significant interest in this case, because several of its members are directly regulated by SB 419, and that law infringes their First Amendment rights. CCIA therefore wishes to file an *amicus curiae* brief in support of injunctive relief. All parties have consented to this motion.

---

[1] A list of CCIA members is available at https://www.ccianet.org/members.

App stores provide a vast, curated forum for speech. Expressive control over the content available on app stores is therefore essential to the flourishing array of experiences that users seek on their devices. The benefits to the marketplace of ideas are likewise manifest. Digital apps cover virtually every aspect of life, providing news, entertainment, access to the arts, political information, and health data, and catering to hobbies and interests of all description. "[T]he phrase 'there's an app for that' is now part of the popular lexicon." *Riley v. California*, 573 U.S. 373, 396 (2014).

Montana's "unprecedented"[2] and severe restriction of which apps can be made available on app stores deeply infringes these private companies' core First Amendment rights. Montana's restriction poses a particular threat to the internet, because app stores are a vital gateway to—and source of—curated expression. CCIA therefore has a unique perspective on the scope and impact of Montana's law that is relevant to the constitutional issues before the Court.

Plaintiffs have presented an overbreadth challenge to Montana SB 419. *See* Br. ISO Consol. Pls.' Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 12 at 16-17; Pls.' Mem. of Law ISO Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 18 at 13-14. Overbreadth analysis accounts for a law's effects on all

---

[2] Complaint for Injunctive and Declaratory Relief, No. 9:23-cv-00056, ECF 1 at 22 ¶ 53 (quoting Attorney General Knudsen). SB 419 is the only statute in the United States that applies to private citizens' use of the TikTok app.

parties, including those who are not before the Court.  In the Court's analysis of Plaintiffs' facial overbreadth challenge to Montana's law, movant proposes to offer the Court an analysis of the distinct constitutional harms to app stores and the unique First Amendment interests that Montana's law offends.

For all these reasons, CCIA's motion for leave to participate as *amicus curiae* should be granted.

## ARGUMENT

In this District, amicus participation may be granted where the amicus is "interested in the matter" and a "brief is desirable and relevant." L.R. 7.5(b)(2)(C)-(D).  The "classic role" of an amicus curiae is to assist a court in a case of public interest by "supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Lab. & Indus., State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). "An amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997); *see also Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 132 (3d Cir. 2002).

CCIA satisfies these standards.  It has a unique perspective that can assist the Court's consideration of the case.  CCIA members' products and services include

app stores that exercise editorial discretion in curating apps and thus are directly regulated by SB 419. The First Amendment analysis that CCIA offers will complement that presented by Plaintiffs and will assist the Court in assessing the facial constitutionality of the law, particularly through the lens of the overbreadth doctrine.

## I.    CCIA HAS A DIRECT INTEREST IN THE MATTER

CCIA is an international, not-for-profit association representing a broad cross-section of communications, technology, and internet industry firms, including companies that offer app stores subject to SB 419. CCIA's members are thus directly regulated by SB 419 and the ban infringes their First Amendment rights.

A. SB 419 works in two ways. First, it prohibits TikTok from operating in the State. *See* SB 419 § 1(1)(a). Second, it prohibits mobile application stores from providing even "the option to download the tiktok mobile application" "within the territorial jurisdiction of Montana." *Id.* § 1(1)(b). A mobile application store that does not remove TikTok by January 1, 2024, will be fined $10,000 for each person within Montana who has access to the store for every day that TikTok remains available for download. *Id.* §§ 1(2), 1(7).

To illustrate the severity of SB 419's penalties, consider a mobile application store that is accessible by 100,000 people within Montana. If TikTok remains available for download by these users for just one day, the app store will be liable

for $1 billion. Ten days would cost $10 billion. And so on. Indeed, the statute may expose certain of CCIA's members to greater liability than TikTok itself. TikTok is liable only if people within Montana access the app. *Id.* §§ 1(1)(a), 1(2), 1(7)(a). Thus, absent injunctive relief, these CCIA members will be liable as of January 1, 2024, for every person who *could* access the app, even if they never download or use it. *Id.* §§ 1(1)(b), 1(2), 1(7)(a).

Unless SB 419 is enjoined, these penalties will leave companies, including several of CCIA's members, with no choice but to remove TikTok from their app stores if they have reason to believe the device in question is located in Montana. Yet CCIA's members do not have state-specific app stores, and smartphone users travel into and out of Montana every day. Requiring mobile app stores to remove TikTok from the app store when the user sets foot in Montana and re-enable it when a user is out, if possible at all, would present a practical and logistical nightmare.

Even if CCIA's members could, consistent with state privacy laws, enable and disable TikTok based on a user's location, the regime that would be ushered in by SB 419 would create novel privacy and security concerns about the data that mobile app stores collect from, and safeguard for, their users. CCIA's members take user privacy very seriously. In fact, CCIA's members take data privacy and security into account when deciding which applications to host on their stores. SB 419 will, if allowed to become effective, threaten to increase these risks. All of CCIA's

members have a strong interest in minimizing user risk with regard to privacy and data security.

B. SB 419 also infringes the First Amendment rights of CCIA members that provide app stores. The First Amendment protects those who curate, select, and present the speech of others. *See Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 569-70 (1995) ("the presentation of an edited compilation of speech generated by other persons . . . fall[s] squarely within the core of First Amendment security"). App stores engage in this constitutionally protected expression by developing standards governing the types of apps allowed, applying those standards, and curating a user experience that reflects the app store's editorial discretion.

In making decisions about which apps to allow, app stores function much like a publisher of third-party speech, selecting which communications to provide its customers through its forum for speech. The First Amendment protects the rights of publishers to make these editorial choices. The Supreme Court has explained that publishers are "more than a passive receptacle or conduit for news, comment, and advertising" of others. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Rather, publishers exercise "editorial control and judgment" over the "choice of material" to present or exclude in their publications. *Id.*; *see also Hurley*, 515 U.S. at 570.

This principle applies fully to publishers of third-party speech, including app stores.  Just like a newspaper or periodical publisher, app stores exercise editorial discretion when deciding which third-party applications to make available, and the manner in which available applications are presented to users.  These judgments are based in part on the communicative content of the underlying apps.  And the fact that app stores make *different* judgments about how to curate content underscores the protected expressive nature of app stores' speech.  CCIA is well positioned to explain to the Court the different approaches taken by different app stores.

SB 419 targets app stores' editorial discretion by completely banning one particular app for download in Montana.  If granted leave to participate as *amicus curiae*, CCIA would explain how this law burdens its members' First Amendment rights and why Montana cannot justify its severe restriction of app stores' expression.

## II.   CCIA'S PARTICIPATION IS DESIRABLE AND RELEVANT BECAUSE IT WILL PRESENT DISTINCT ARGUMENTS CRITICAL TO THE COURT'S ANALYSIS

This case is of surpassing public importance.  The Court will determine whether a state may ban particular speech in a novel technological context.  Its decision will have sweeping implications for the regulation of the internet throughout the United States.   In answering a question of such far-reaching consequence, this Court would benefit from an array of considered viewpoints,

including from those, like CCIA's members, directly affected by the law.

CCIA's viewpoint is also unique. TikTok asserts that the ban violates its First Amendment right to "speak[] to and mak[e] curated content available to users in Montana." Br. ISO Consol. Pls.' Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 12 at 7. The content creators assert a First Amendment right to access TikTok as a forum for their expression. *See* Pls.' Mem. of Law ISO Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 18 at 1. CCIA's members assert a First Amendment right to provide a curated user experience through an app store. CCIA's arguments thus implicate complementary—yet different—interests than those of the plaintiffs litigating before the Court. And its arguments are vital to assessing the constitutionality of SB 419.

App stores' First Amendment interests are especially relevant to the Court's consideration of Plaintiffs' overbreadth challenge. *See* Br. ISO Consol. Pls.' Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 12 at 16-17; Pls.' Mem. of Law ISO Mot. for Preliminary Injunction, No. 9:23-cv-00056, ECF 18 at 13-14. The overbreadth doctrine provides that a law is facially invalid when its unconstitutional scope is both real and substantial in relation to any legitimate applications. *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023). Overbreadth analysis accounts for a law's effects on all parties, including those "not before the Court." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S.

789, 801 (1984). While the overbreadth doctrine may often turn on "hypotheticals," *Hansen*, 143 S. Ct. at 1947 n.5, in this case, it turns on direct, concrete, and explicit effects:   Montana has directly regulated app stores with draconian penalties for offering one particular app.   Thus, the distinct constitutional harms that Montana's ban threatens to inflict on app stores are directly relevant to the issues before the Court. CCIA's ability to articulate its members' First Amendment rights and explain the Montana ban's harms is both desirable and relevant.

Finally, CCIA has considerable experience in litigating the First Amendment implications of attempts to restrict online speech, being a co-plaintiff in two federal cases presently before the Supreme Court on petitions for certiorari. *See* Pet. for Certiorari, *NetChoice, LLC et al. v. Paxton*, No. 22-555; Pet. for Certiorari, *Moody v. NetChoice, LLC et al.*, No. 22-277; Pet. for Certiorari, *NetChoice, LLC v. Moody*, No. 22-393.

## III.   CCIA IS PREPARED TO FILE ITS BRIEF *AMICUS CURIAE* WITH ALL DUE HASTE

CCIA is prepared to file its *amicus curiae* brief on any schedule established by the Court.   It proposes to file its brief on August 4, 2023.   This deadline will afford the State ample time to respond to CCIA's arguments and will allow orderly briefing of the issues.   All parties have consented to this motion.

## CONCLUSION

For the reasons stated above, CCIA respectfully requests that this Court grant

its Motion for Leave to File an *Amicus Curiae* Brief in this matter.

Dated:  July 26, 2023

By: */s/ Paul J. Lopach*
                                    

Paul J. Lopach
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
Email:  paul.lopach@bclplaw.com

Michael R. Dreeben
 *Pro hac vice motion to be filed*
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC  20006-4061
Telephone:     (202) 383-5300
Facsimile:      (202) 383-5414
Email:  mdreeben@omm.com

*Attorneys for movant Computer &
Communications Industry Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), the undersigned hereby certifies that this motion contains 2,142 words as calculated by Word for Office 365, excluding the Caption, Certificate of Compliance, counsel signature, and Certificate of Service. The undersigned also certifies that this brief is typewritten and double-spaced excluding block quotes, in 14-point font.

By: */s/ Paul J. Lopach*

Paul J. Lopach
*Attorney for movant Computer &*
*Communications Industry Association*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 26, 2023, a true and correct copy of the foregoing Motion for Leave to File *Amicus Curiae* Brief was filed by hand served via Federal Express Next Day upon the following:

Ambika Kumar
Davis Wright Tremaine LLP
920 Fifth Avenue
Suite 3300
Seattle, WA 98104-1610
Email: ambikakumar@dwt.com

Matthew B. Hayhurst
Natasha Prinzing Jones
BOONE KARLBERG, P.C.
201 West Main Street, Suite 300
Missoula, MT 59807-9199
Email: mhayhurst@boonekarlberg.com

Tim Cunningham
Davis Wright Tremaine LLP
1300 SW 5th Ave.
Ste 2400
Portland, OR 97201
Email: timcunningham@dwt.com

*Attorneys for Plaintiffs*

Nathan D. Bilyeu
Robert Thomas Cameron
JACKSON, MURDO & GRANT, P.C.
203 N Ewing Street
Helena, MT 59601-4298
Email: nbilyeu@jmgattorneys.com

Alexander A. Berengaut
Megan Crowley

Covington & Burling LLP
One CityCenter
850 10th St., NW
Washington, DC 20001
Email: aberengaut@cov.com

*Attorneys for Consolidated Plaintiff TikTok, Inc.*

Christian B. Corrigan
Peter Martin Torstensen , Jr
Montana Department of Justice
Office of the Attorney General
215 North Sanders
Helena, MT 59601
Email: christian.corrigan@mt.gov

*Attorneys for Defendant Austin Knudsen*

By: */s/ Paul J. Lopach*

Paul J. Lopach
*Attorney for movant Computer &
Communications Industry Association*