Alex Rate
ACLU of Montana
P.O. Box 1968
Missoula, MT 59806
Phone: (406) 443-8590
ratea@aclumontana.org

David Greene (*pro hac vice*)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
davidg@eff.org

Patrick Toomey (*pro hac vice*)
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
ptoomey@aclu.org

*Counsel for Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Montana, and Electronic Frontier Foundation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, *et al.*,<br><br>                     *Plaintiffs*,<br><br>TIKTOK INC.,<br><br>          *Consolidated Plaintiff*,<br>  v.<br><br>AUSTIN KNUDSEN, *in his official capacity as Attorney General of the State of Montana*,<br><br>                     *Defendant*. | Lead Case No.<br>CV 23-56-M-DWM<br><br>Member Case No.<br>CV 23-61-M-DWM<br><br>**BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF MONTANA, AND ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF THE MOTIONS FOR A PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................3

   I.    Montana's TikTok ban targets core First Amendment activity .................3

   II.   SB 419 is a prior restraint subject to the most exacting scrutiny ...............6

       A.   SB 419 is a prior restraint on TikTok and its users ............................6

       B.   Prior restraints are subject to extraordinarily exacting scrutiny .........9

   III.  SB 419 is a total ban on speech and subject to a heightened
       tailoring requirement.................................................................11

   IV.  Claims of national security do not lessen the State's burden ...................15

CONCLUSION .................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Alexander v. United States*,
    509 U.S. 544 (1993)......................................................................1, 6

*Al-Haramain Islamic Found., Inc. v. Bush*,
    507 F.3d 1190 (9th Cir. 2007) ...............................................16

*Aptheker v. Sec. of State*,
    378 U.S. 500 (1964)......................................................................17

*Bantam Books*, *Inc. v. Sullivan*,
    372 U.S. 58 (1963)..................................................... 5, 7, 8, 10

*Carroll v. President & Comm'rs of Princess Anne*,
    393 U.S. 175 (1968)......................................................................11

*City of Lakewood v. Plain Dealer Pub. Co.*,
    486 U.S. 750 (1988)......................................................................12

*Columbia Broad. Sys., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    729 F.2d 1174 (9th Cir. 1984) ....................................... 1, 10

*Craig v. Harney*,
    331 U.S. 367 (1947)......................................................................10

*Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019) ...................................................7

*De Jonge v. Oregon*,
    299 U.S. 353 (1937)......................................................................17

*Frisby v. Schultz*,
    487 U.S. 474 (1988)......................................................................14

*Ground Zero Ctr. for Non-Violent Action v. Dep't of Navy*,
    860 F.3d 1244 (9th Cir. 2017) .............................................17

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004) ..................................................................................16

*HomeAway.com, Inc. v. City of Santa Monica,*
    918 F.3d 676 (9th Cir. 2019) ....................................................................6

*In re Wash. Post Co.,*
    807 F.2d 383 (4th Cir. 1986) ..................................................................16

*Kennedy v. Mendoza-Martinez,*
    372 U.S. 144 (1963) ................................................................................16

*Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.,*
    764 F.2d 590 (9th Cir. 1985). ..................................................................10

*Lovell v. City of Griffin,*
    303 U.S. 444 (1938) ................................................................................14

*Martin v. City of Struthers,*
    319 U.S. 141 (1943) ................................................................................12

*Members of City Council of L.A. v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) ............................................................................ 2, 14

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue,*
    460 U.S. 575 (1983) ..................................................................................6

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ................................................................................16

*N.Y. Times Co. v. United States,*
    403 U.S. 713 (1971) .......................................................................... passim

*Near v. Minnesota ex rel. Olson,*
    283 U.S. 697 (1931) .......................................................................... 7, 8, 9

*Neb. Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .......................................................................... 7, 11

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ..................................................................................11

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ............................................................................ 3, 13

*Reno v. ACLU*,
    521 U.S. 844 (1997) ...........................................................................3, 8

*Rosen v. Port of Portland*,
    641 F.2d 1243 (9th Cir. 1981) ..............................................................11

*Schad v. Mount Ephraim*,
    452 U.S. 61 (1981) ..................................................................................14

*Schneider v. New Jersey*,
    308 U.S. 147 (1939) ................................................................................12

*Smith v. Daily Mail Pub.*,
    443 U.S. 97 (1979) ..................................................................................10

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) .................................................................................6

*United States v. Grace*,
    461 U.S. 171 (1983) ................................................................................13

*United States v. Robel*,
    389 U.S. 258 (1967) ................................................................................17

*Vance v. Universal Amusement Co.*,
    445 U.S. 308 (1980) .................................................................................7

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................................14

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................................15

## Other Authorities

Arlyssa Becenti, *Native TikTok Creators Worry a Ban Would Take Away
Connections, Communities*, AZCentral (Apr. 3, 2023),
https://perma.cc/475N-D9NW .................................................................................4

Bobby Allyn, *TikTok Pivots from Dance Moves to a Racial Justice Movement*,
NPR (June 7, 2020),
https://perma.cc/4CEX-CP46...................................................................................4

Gene Del Vecchio, *TikTok Is Pure Self-Expression. This Is Your Must-Try
Sampler*, Forbes (June 6, 2020),
https://perma.cc/6UJ6-JEPS.....................................................................................3

John Brandon, *One Reason TikTok Is the Most Popular Social Media App of the
Year So Far*, Forbes (Apr. 28, 2022),
https://perma.cc/GE4M-8ERD.................................................................................13

Bess Pierre & R.J. Cross, *Demystifying TikTok Data Collection*, PIRG
(June 15, 2023), https://perma.cc/VW5V-NU9H ....................................................9

Press Release, Gov. Greg Gianforte, Governor Gianforte Bans TikTok in Montana
(May 17, 2023),
https://news.mt.gov/Governors-Office/Governor_
Gianforte_Bans_TikTok_in_Montana.....................................................................15

Stephen R. Barnett, *The Puzzle of Prior Restraint*, 29 Stan. L. Rev. 539 (1977) .....6

## INTRODUCTION

Montana's ban on TikTok—an application that hundreds of thousands of people in the state use to communicate, learn about the world, and express themselves—is both unprecedented and unconstitutional. Senate Bill 419 is a direct restriction on protected expression and association. It deliberately singles out a communications platform, imposing a blanket prohibition that will make it impossible for users to speak, access information, and associate through TikTok. As a result, the statute triggers an especially exacting form of First Amendment scrutiny.

Amici's brief sets out the First Amendment standards that apply to the State's effort to ban an entire medium of expression like TikTok.

First, SB 419 constitutes a prior restraint on TikTok and its users, an especially disfavored means of restricting First Amendment rights. This is because the statute will shut down the app, blocking hundreds of thousands of users in Montana, as well as TikTok itself, from engaging in protected expression "in advance of the time that [their] communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). As a result, this Court must apply an "extraordinarily exacting" form of strict scrutiny. *Columbia Broad. Sys., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 729 F.2d 1174, 1178 (9th Cir. 1984).

1

Second, even if SB 419 did not constitute a prior restraint, it would still have to satisfy a strict narrow-tailoring requirement because it is a total ban on a unique and important means of communication, and thus it "foreclose[s] an entire medium of expression." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994). In these circumstances, courts apply an exacting standard: a total ban fails unless it "curtails no more speech than is necessary to accomplish its purpose." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984).

Finally, the degree of judicial scrutiny that applies to SB 419 is not diminished by the State's national security and foreign espionage claims. As both the Supreme Court and the Ninth Circuit have made clear, the government's burden to justify an infringement on First Amendment rights is the same in the national security context as in any other. *See, e.g.*, *N.Y. Times Co. v. United States* ("*Pentagon Papers*"), 403 U.S. 713, 729-30 (1971). In fact, the judiciary has an especially critical role to play in ensuring that the government meets its burden when national security is invoked.

Amici urge the Court to see SB 419 for what it is: a sweeping ban on free expression that triggers the most exacting scrutiny under the First Amendment. Because SB 419 fails this test, the Court should grant the Motions for a Preliminary Injunction.

## ARGUMENT

### I.   Montana's TikTok ban targets core First Amendment activity.

In 2017, the Supreme Court recognized that the "most important places . . . for the exchange of views" are "the 'vast democratic forums of the Internet' in general . . . and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. ACLU*, 521 U.S. 844, 868 (1997)).

With more than 150 million American users, TikTok hosts a wide universe of expressive content, from musical performances and comedy to politics and current events. *See, e.g.*, Gene Del Vecchio, *TikTok Is Pure Self-Expression. This Is Your Must-Try Sampler*, Forbes (June 6, 2020), https://perma.cc/6UJ6-JEPS. And with over 1.6 billion users worldwide, TikTok is host to an enormous community that Montanans cannot readily reach elsewhere. This expansive reach allows users in Montana to communicate with people far beyond the state's borders—and vice versa. People can use hashtags like #Montana, #bigskycountry, #lastbestplace and #406 to follow local leaders in Montana, learn about the state's best outdoor activities, and track current events in Montana, such as the 2023 legislative session.[1]

---

[1] *See, e.g.*, Gen-Z for Change (@genzforchange), TikTok (Apr. 26, 2023), https://www.tiktok.com/@genzforchange/video/7226449908042173742?_r=1&_t= 8eLkXRnbA8c

TikTok plays an especially important and outsized role for minority communities seeking to foster solidarity online and to highlight issues vital to them. *See, e.g.*, Arlyssa Becenti, *Native TikTok Creators Worry a Ban Would Take Away Connections, Communities*, AZCentral (Apr. 3, 2023), https://perma.cc/475N-D9NW; Bobby Allyn, *TikTok Pivots from Dance Moves to a Racial Justice Movement*, NPR (June 7, 2020), https://perma.cc/4CEX-CP46. For example, one Indigenous artist based in Montana, @Supaman, reaches over 79,000 followers on TikTok with videos showcasing not only his music and dance but also Indigenous hope, history, and resilience.[2] Also from Montana, Asian American and Indigenous activist @kyyen_lht uses her platform to amplify issues affecting tribal communities, such as the history and importance of the Indian Child Welfare Act.[3]

TikTok is also a unique expressive platform for non-profits like Amici, who will be cut off from TikTok users in Montana by the ban. Non-profits use TikTok to grow their base, communicate with their supporters, and elevate their causes, and TikTok specifically offers tools for non-profits to achieve these goals. *See* TikTok For Good, https://www.tiktok.com/forgood (last visited July 27, 2023). The ACLU and EFF, with over 148,000 followers and 2.6 million likes

---

[2] *See* Supaman (@supamantiktok), TikTok (Nov. 17, 2020), https://www.tiktok.com/@supamantiktok/video/6896285810551753990.

[3] *See* Kyyen LeftHandThunder (@kyyen_lht), TikTok (Mar. 6, 2023), hthttps://www.tiktok.com/@kyyen_lht/video/7207543568930573610.

collectively,[4] use the platform for these purposes—to show the human impact of government policies, inform people of their rights, and alert their supporters to new legislation in Montana and elsewhere.[5]

By banning TikTok's operation in Montana, SB 419 shutters the wide range of expression that takes place on the platform, cutting off hundreds of thousands of Montanans who use the app and depriving users around the world of their unique content. The ban also implicates TikTok's own First Amendment-protected activities on the platform, including the content it posts itself and its editorial decision-making about what user content to carry and amplify. *Cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (recognizing the First Amendment rights of book publishers to decide which books to publish).

Although the State may argue that SB 419 regulates only conduct by app stores and TikTok itself, the law plainly triggers First Amendment scrutiny. As the Supreme Court explained in *Minneapolis Star & Tribune Co. v. Minnesota*

---

[4] *See* ACLU (@aclu), TikTok, https://www.tiktok.com/@aclu?lang=en (last visited Aug. 10, 2023); Electronic Frontier Found. (@efforg), TikTok, https://www.tiktok.com/@efforg?lang=en (last visited Aug. 10, 2023).

[5] *See, e.g.*, ACLU (@aclu), TikTok (June 8, 2022), https://www.tiktok.com/@aclu/video/7107028718383533354; ACLU (@aclu), TikTok (June 13, 2023), https://www.tiktok.com/@aclu/video/7244323765520354606; ACLU (@aclu), TikTok (Feb. 27, 2023), https://www.tiktok.com/@aclu/video/7204964519834029354.

*Commissioner of Revenue*, "facially discriminatory" regulations that "singl[e] out" a particular means of expression trigger First Amendment scrutiny. 460 U.S. 575, 581, 585, 591-92 (1983); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). Indeed, "[a] court may consider the inevitable effect of a statute on its face, as well as a statute's stated purpose" to determine whether it will have "the inevitable effect of singling out those engaged in expressive activity." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019). Montana's TikTok ban has precisely that purpose and effect.

## II.   SB 419 is a prior restraint subject to the most exacting scrutiny.

### A.   SB 419 is a prior restraint on TikTok and its users.

"Prior restraints" are "orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander*, 509 U.S. at 550. The "historical paradigm" of a prior restraint was the English system of licensing all presses and printers, which forbade printing without government permission. Stephen R. Barnett, *The Puzzle of Prior Restraint*, 29 Stan. L. Rev. 539, 544 (1977). But the Supreme Court has since recognized that prior restraints can take many forms, from a board that issues advisory notices about the suitability of books for minors, *see Bantam Books*, *Inc.*, 372 U.S. 58, to a court injunction against publication of a particular newspaper, *see Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931).

In *Nebraska Press Association*, the Supreme Court highlighted the defining features of prior restraints by contrasting them with subsequent punishments. The Court explained: "[i]f it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." 427 U.S. 539, 559 (1976). "Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 n.13 (1980). Thus, there are two elements common to prior restraints: they bar expression *before* it is uttered; and rather than merely chilling speech through risk of subsequent sanction, they prevent speech altogether. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 831-32 (9th Cir. 2019) ("[A] prior restraint stifles speech before it can take place.").

SB 419 suppresses speech on the app before users, or TikTok itself, can post on the platform. In *Near*, the Supreme Court held that a state court injunction barring a newspaper from publishing constituted a prior restraint, and, as such, was "the essence of censorship." 283 U.S. at 713; *see also Pentagon Papers*, 403 U.S. at 729-30 (holding injunction against publication of the Pentagon Papers an unconstitutional prior restraint). Here, SB 419 similarly shuts down the speech of TikTok and its users by barring them from posting content in the first place. The effects of SB 419 are even more sweeping than in *Near*, as the statute prohibits not

7

only the publication of one news source, but the immense range of expression that TikTok users in Montana share with their audiences inside and outside the state. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (digital mediums like TikTok allow "any person . . . [to] become a town crier with a voice that resonates farther than it could from any soapbox").

The State may argue that SB 419 is directed at "entities," not users of TikTok, but the law targets both, SB 419 § 1(a)—and, in any event, that would not change the prior restraint analysis. *See Bantam Books*, 372 U.S. at 67 (holding that even far less direct restrictions on expression can constitute prior restraints and instructing courts to "look through forms to the substance"). By shutting down the platform in Montana, SB 419 forecloses speech from users and from TikTok itself that would otherwise occur through the app. These are direct restrictions on the speech of TikTok and its users.

Montana's TikTok ban embodies the particular dangers that the prior restraint doctrine was designed to prevent. It blocks far more speech than necessary to serve any legitimate purpose, banning TikTok's "operation" outright and alluding generally to concerns over "dangerous content" without ever defining it. SB 419 § 1(a), Preamble. It also plainly raises the issue of political bias and motivation, singling out TikTok because of its foreign ownership even as other major social media platforms raise similar privacy and content-moderation issues.

*Id.*; *see, e.g.*, Bess Pierre & R.J. Cross, *Demystifying TikTok Data Collection*, PIRG (June 15, 2023), https://perma.cc/VW5V-NU9H. Courts' special distrust of prior restraints is particularly apt here.

In urging passage of SB 419, the Attorney General argued that the ban "is not content-based," Kumar Decl. Ex. 1, at 17, ECF No. 18-6, but that claim cannot excuse a prior restraint. First, as Plaintiffs explain, SB 419 does discriminate based on content. *See* Br. in Supp. of Pls. Mot. for Prelim. Inj. ("Pls. Br.") 15-16, ECF No. 18; Br. in Supp. of Consol. Pl. Mot. for Prelim. Inj. ("Consol. Pl. Br.") 7-8, ECF No. 12. Moreover, even if the TikTok ban were deemed content-neutral, the Supreme Court has never held that content discrimination is a required element of a prior restraint—and for good reason, as this case shows. The State's prohibition here is even more sweeping than those in *Near* or *Pentagon Papers*, as it has not merely forbidden particular communications on TikTok based on their content, but banned the entire platform. It is as though, in *Near*, the state court had enjoined *all* local newspapers from future publication, or in *Pentagon Papers*, the lower court had shut down the *New York Times* entirely.

**B.  Prior restraints are subject to extraordinarily exacting scrutiny.**

Because SB 419 constitutes a prior restraint, this Court must subject it to "the most exacting scrutiny." *Smith v. Daily Mail Pub.*, 443 U.S. 97, 102 (1979); *see also Columbia Broad. Sys.*, 729 F.2d at 1178. Indeed, the purpose of the prior

restraint doctrine is to apply "a heavy presumption" of constitutional invalidity to this especially harmful category of restrictions. *Bantam Books*, 372 U.S. at 63. Accordingly, both prongs of traditional "strict scrutiny"—the requirements that the challenged government action advance a compelling interest, and that it be narrowly tailored to achieve that interest—are heightened.

First, to pass constitutional muster, a prior restraint must do more than merely further a compelling interest; it must be necessary to further an urgent interest of the highest magnitude. *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 845 (1978). The government must show that the harm it seeks to prevent is not only extremely serious but "direct, immediate, and irreparable." *Pentagon Papers*, 403 U.S. at 730 (Stewart, J., concurring); *see id.* at 726-27 (Brennan, J., concurring). The government must also show that the harm is not simply possible, or even probable, but that its "degree of imminence [is] extremely high" as demonstrated by a "solidity of evidence." *Landmark Commc'ns*, 435 U.S. at 845; *accord Craig v. Harney*, 331 U.S. 367, 376 (1947); *Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985).

Second, when analyzing prior restraints, the Supreme Court has imposed an especially demanding form of the narrow-tailoring requirement. Prior restraints must be "couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public

order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968). The government must show both that the prior restraint will serve its purpose, and that it is the only way to do so. *Neb. Press*, 427 U.S. at 562, 565, 569-70; *see also Rosen v. Port of Portland*, 641 F.2d 1243, 1250 (9th Cir. 1981) ("Any 'prior restraint,' therefore, must be held unconstitutional, unless no other choice exists."). Thus, the government "carries a heavy burden of showing justification for the imposition of [] a [prior] restraint." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

For the reasons discussed by Plaintiffs, the State cannot meet its burden under this demanding standard, *see* Pls. Br. 8-12; Consol. Pl. Br. 6-13, and the Court should grant Plaintiffs' Motions for Preliminary Injunction.

## III. SB 419 is a total ban on speech and subject to a heightened tailoring requirement.

If this Court does not classify SB 419 as a prior restraint, it still must apply exacting scrutiny because the government has imposed a "total ban" on TikTok, a unique and important medium of expression.

In *City of Ladue*, the Supreme Court recognized a category of prohibitions on speech that cause "particular concern" because they "foreclose an entire medium of expression"—and so, like prior restraints, "can suppress too much

11

speech."[6] 512 U.S. at 55. These restrictions, often called "total ban[s]," *see, e.g.*, *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 762 (1988), consist of two elements: they completely "foreclose" speech, and they do so with respect to "an entire medium of expression," *i.e.*, a "means of communication that is both unique and important." *City of Ladue*, 512 U.S. at 54.

SB 419 has both of these elements. As discussed above, SB 419 completely forecloses users' speech on the app. And TikTok is a "unique and important" medium of expression. *Id*. at 54. The Supreme Court has explained that "[t]he widespread use of [a] method of communication by many groups espousing various causes atests [sic] its major importance." *Martin v. City of Struthers*, 319 U.S. 141, 145-46 (1943). A lack of practical substitutes and the medium's ease of use are also strong evidence of its importance. *See City of Ladue*, 512 U.S. at 57 (because "[r]esidential signs are [] unusually cheap[,] . . . for persons of modest means or limited mobility, a yard or window sign may have no practical substitute"); *Schneider v. New Jersey,* 308 U.S. 147, 164 (1939). TikTok has all these qualities. It has an immense audience that would be extraordinarily hard to replace, with nearly half of the U.S. population using the application. In addition, it

---

[6] *City of Ladue* cited numerous prior decisions striking down total bans. *See* 512 U.S. at 55 (collecting cases).

offers a multitude of expressive and educational functions for many different groups, *see* Section I, *supra*, and is easy and free to use.

In considering the uniqueness and importance of TikTok, the Supreme Court's discussion of social media in *Packingham* is instructive. There, the Court addressed a prohibition on the use of social networking websites by people previously convicted of sex offenses. Calling "cyberspace" the "most important place[] . . . for the exchange of views," and noting that social media in particular "can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard," the Court struck down the state's restriction as a "complete bar to the exercise of First Amendment rights on websites integral to the fabric of our modern society and culture." *Packingham*, 582 U.S. at 104, 107, 109. TikTok is similarly integral to society and culture, with users—including hundreds of thousands in Montana—relying on it for sharing news, learning about the world, developing new skills, and countless other forms of expression. *See* John Brandon, *One Reason TikTok Is the Most Popular Social Media App of the Year So Far*, Forbes (Apr. 28, 2022), https://perma.cc/GE4M-8ERD.

Because it is a total ban, SB 419 is subject to more exacting judicial review than the intermediate scrutiny applicable to time, place, or manner restrictions. *See United States v. Grace*, 461 U.S. 171, 177 (1983). In *Packingham*, the Supreme Court held that it did not need to determine what level of scrutiny governed the

prohibitions at issue because they easily failed even intermediate scrutiny. 582

U.S. at 105-06. But in other cases, the Supreme Court has established that

"regulations that . . . foreclose an entire medium of expression" are distinct from,

and more suspect than, those that "merely shift the time, place, or manner of its

use." *City of Ladue*, 512 U.S. at 56; *see also Lovell v. City of Griffin,* 303 U.S. 444,

451 (1938) ("The ordinance is comprehensive with respect to the method of

distribution . . . . There is thus no restriction in its application with respect to time

or place.").[7]

　　While time, place, or manner restrictions need not "be the least restrictive or

least intrusive means" of achieving the government's objectives, *Ward*, 491 U.S. at

798, a total ban must "curtail[] no more speech than is necessary to accomplish

[the State's] purpose," *Vincent*, 466 U.S. at 810; *accord Frisby v. Schultz*, 487 U.S.

474, 485 (1988) ("A complete ban can be narrowly tailored" only "if it targets and

eliminates no more than the exact source of the 'evil' it seeks to remedy.") (citation

omitted). Because SB 419 is a total ban, and because SB 419 is undeniably

overbroad, Pls. Br. 13-14; Consol. Pl. Br. 13-14, the Court should grant the

Motions for a Preliminary Injunction.

---

[7] Even cases suggesting that total bans are a subset of time, place, or manner restrictions hold that such bans fail intermediate scrutiny by not "leav[ing] open ample alternative channels of communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 802 (1989); *see also Schad v. Mount Ephraim*, 452 U.S. 61, 75-76 (1981).

**IV.    Claims of national security do not lessen the State's burden.**

In public, Montana's Governor and Attorney General have defended SB 419 by citing purported national security concerns, including claims that TikTok is used for foreign espionage and "intelligence gathering by the Chinese Communist Party." Press Release, Gov. Greg Gianforte, Governor Gianforte Bans TikTok in Montana (May 17, 2023), https://news.mt.gov/Governors-Office/Governor_ Gianforte_Bans_TikTok_in_Montana; *see also* SB 419 Preamble. Setting aside whether a state can dictate its own national security policy vis-à-vis foreign powers, *see* Pls. Br. 20-25; Consol. Pl. Br. 17-23, the mere incantation of "national security" cannot diminish the searching judicial scrutiny applicable here. If anything, it requires more skeptical review.

"The word 'security' . . . should not be invoked to abrogate the fundamental law embodied in the First Amendment." *Pentagon Papers*, 403 U.S. at 719 (Black, J., concurring). That is, "national-security concerns must not become a talisman used to ward off inconvenient claims—a label used to cover a multitude of sins." *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017). "Simply saying 'military secret,' 'national security' or 'terrorist threat' . . . is insufficient to [carry the government's burden]." *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007).

To the contrary, in matters of national security as elsewhere, courts must fulfill their "time-honored and constitutionally mandated roles of reviewing and resolving claims" alleging violations of civil liberties. *Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004). Indeed, meaningful review is *more* important where the government asserts a national security justification: "[g]iven the difficulty of defining the domestic security interest, the danger of abuse in acting to protect that interest becomes apparent." *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985). Government officials may "disregard constitutional rights in their zeal to protect the national security," *id.*, giving in to the "temptation to dispense with fundamental constitutional guarantees[,]" *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165 (1963).

For these reasons, the invocation of "national security" requires vigilance by the courts, rather than deference. It does not alter the applicable First Amendment standards. "History teaches us how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions. A blind acceptance by the courts of the government's [rationale] . . . would impermissibly compromise the independence of the judiciary and open the door to possible abuse." *In re Wash. Post Co.*, 807 F.2d 383, 391-92 (4th Cir. 1986). The Supreme Court's decision in *Pentagon Papers* is particularly instructive here. In analyzing a prohibition on publication of the Pentagon Papers during the Vietnam

War, the Court applied the same "heavy presumption against its constitutional validity," and held the government to the same "heavy burden," that applies to other prior restraints. 403 U.S. at 714. The Ninth Circuit has similarly recognized that "national security interests . . . are generally insufficient to overcome the First Amendment's 'heavy presumption' against the constitutionality of prior restraints." *Ground Zero Ctr. for Non-Violent Action v. Dep't of Navy*, 860 F.3d 1244, 1260 (9th Cir. 2017).

Likewise, as the Supreme Court has repeatedly held, even when national security concerns apply, "precision must be the touchstone of legislation so affecting basic freedoms." *Aptheker v. Sec. of State*, 378 U.S. 500, 514 (1964). For example, in *United States v. Robel*, the Court struck down a statute barring members of the Communist party from employment in a federal defense facility, despite the government's national security rationale, citing "the fatal defect of overbreadth because [the statute] . . . [sanctions] association which may not be proscribed consistently with First Amendment rights." 389 U.S. 258, 266 (1967); *see also De Jonge v. Oregon*, 299 U.S. 353, 364-65 (1937).

Regardless of whether SB 419 is characterized as a prior restraint or a total ban, the State cannot avoid exacting judicial scrutiny by invoking national security to justify SB 419's sweeping prohibition on speech and association.

17

## CONCLUSION

Amici respectfully urge the Court to apply the extraordinarily exacting scrutiny required by the First Amendment and grant the Motions for a Preliminary Injunction.

Dated: August 11, 2023 /s/ Patrick Toomey

Patrick Toomey (*pro hac vice*)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
ptoomey@aclu.org

Alex Rate (Bar No. 11226)
ACLU of Montana
P.O. Box 1968
Missoula, MT 59806
Phone: (406) 443-8590
ratea@aclumontana.org

David Greene (*pro hac vice*)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
davidg@eff.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E), Local Rules of the United States District Court, District of Montana, I certify that this brief contains 3,963 words, exclusive of caption, tables of contents and authorities, signature blocks, and any certificates.

Dated: August 11, 2023                    /s/ Patrick Toomey

Patrick Toomey (*pro hac vice*)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
ptoomey@aclu.org

*Counsel for Amici Curiae*