AUSTIN KNUDSEN
Montana Attorney General
CHRISTIAN B. CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Attorneys for Defendant*

TYLER GREEN*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
Phone: 703-243-9423
tyler@consovoymccarthy.com
 *Admitted *pro hac vice*

KATHLEEN L. SMITHGALL
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Phone: 703-243-9423
katie@consovoymccarthy.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

SAMANTHA ALARIO, et al.,

        *Plaintiffs*,

and

TIKTOK INC.,

        *Consolidated Plaintiff*,

v.

AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana

        *Defendant*.

Lead Case No.
CV 23-56-M-DWM

Member Case No.
CV 23-61-M-DWM

**DEFENDANT'S PRELIMINARY PRETRIAL STATEMENT**

Defendant Montana Attorney General Austin Knudsen hereby submits his Preliminary Pretrial Statement under L.R. 16(2)(b)(1).

## A. Brief Factual Outline of Case

On May 17, 2023, Governor Gianforte signed Senate Bill 419. SB 419 prohibits TikTok from operating within Montana and prohibits mobile application stores from making TikTok's app downloadable in Montana. The law imposes a $10,000 fine for each discrete violation and an additional $10,000 fine each day the violation continues. These penalties only apply to TikTok itself or the mobile application stores. The penalties do not apply if these entities could not have reasonably known that the violation occurred within Montana's territorial jurisdiction or if TikTok is being used to aid law enforcement, national security, or essential government activity.

The preamble of SB 419 explains the State's interests in enacting the law. First, the State has an interest in protecting its citizens' information and data from the Chinese Communist Party. Second, the State has an interest in the health and safety of its citizens.

## B. Jurisdiction and Venue

Defendant does not contest venue in this matter.

The Court's subject matter jurisdiction is limited to cases or controversies under Article III. Defendant raised as an affirmative defense that Plaintiffs lack standing and intend to reserve jurisdictional defenses based on further discovery.

## C. Overview of Likely Defenses to Claims

### 1. User Plaintiffs lack standing.

Defendant reserves the right to argue standing as an affirmative defense, as raised in Defendant's Answer. Defendant intends to seek discovery about User Plaintiffs' use of TikTok and their alleged injuries resulting from SB 419.

### 2. SB 419 is a valid exercise of Montana's police powers.

SB 419 bans TikTok because of the harm resulting from TikTok's data-harvesting, data-storage, and data-access practices. Those practices constitute nonexpressive activity and, among social media apps, raise unique concerns given TikTok's links to the Chinese Communist Party and People's Republic of China, which the U.S. Secretary of Commerce has designated a foreign adversary after determining that China has "engaged in a long-term pattern or serious instances of conduct significantly adverse to the national security of the

United States or security and safety of United States persons." 15 C.F.R. §7.4(a)(1). Given those concerns, the State of Montana can exercise its plenary police power to regulate this nonexpressive conduct. Although this Court determined at the preliminary injunction stage that SB 419 is subject to First Amendment scrutiny, Order at 14, the State reasserts this argument to preserve it throughout litigation.

### 3. SB 419 does not violate the First Amendment (TikTok Claim 1; User Claim 1).

As stated above, the State reasserts that SB 419 is not subject to First Amendment scrutiny. But in the alternative, as the State argued and as this Court recognized, if SB 419 is subject to First Amendment scrutiny, it is subject to no more than intermediate scrutiny. SB 419 applies to all speech on TikTok without regard to its substance or message. Under intermediate scrutiny, the State need only show the regulation is "narrowly tailored to serve a significant government interest." *Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

The State has a significant government interest in protecting Montana consumers. Based on information from whistleblowers, congressional testimony, and widespread reporting on TikTok's failure to

protect user and creator data/information, the State determined that TikTok posed a dangerous risk to Montana citizens. It has an interest in eliminating, or at least minimizing, this risk.

And SB 419 is narrowly drawn though it bans TikTok within the State's jurisdiction because SB 419 bans the only social media platform with ties to the Chinese Communist Party. It does not ban all online platforms—it targets the precise source of the harms and no more. Numerous alternative, unregulated channels of communication still exist.

Finally, although the Court did not address TikTok's or User Plaintiffs' overbreadth argument in its preliminary injunction order, to the extent either Plaintiff intends to pursue that argument, they cannot show a real and substantial overbreadth "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). SB 419 does not foreclose an entire medium and still permits TikTok and User Plaintiffs to create, share, and view videos and other forms of content online.

**4. SB 419 is not preempted by federal law (TikTok Claim 2; User Claim 3,5,6).**

SB 419 is not preempted under the foreign affairs doctrine. To succeed on a preemption claim under the foreign affairs doctrine, Plaintiffs must show that the challenged law "intrudes on a matter of foreign policy with no real claim to be addressing an area of traditional state responsibility." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012) (en banc). Here, the State's consumer-protection interest in SB 419 falls squarely within the State's police power, as discussed above. While this Court determined that the State does not have constitutional authority over foreign affairs, the State does have an interest in consumer protection, which SB 419 seeks to further. SB 419 also does not intrude on any foreign policy matters. Indeed, the federal government has already labeled the Chinese Communist Party a foreign adversary and has determined that China has accessed a significant amount of data from U.S. citizens. Plaintiffs have failed to identify how SB 419 has a "*direct* impact on foreign relations" or will "adversely affect the power of the central government to deal with those problems." *Id.* at 1076-77.

5

SB 419 is not preempted by the Defense Production Act. First, Plaintiffs have failed to identify a "covered transaction" that would trigger the applicability of the Defense Production Act. Second, to the extent they point to the ongoing negotiations in *TikTok Inc. v. CFIUS*, SB 419 does not conflict with these negotiations or otherwise interfere with them. Defendant also notes that those negotiations are under seal.

SB 419 is not preempted by the International Emergency Economic Powers Act. The Court already determined that Plaintiffs are not likely to succeed on this claim. Order at 42. But to the extent either party intends to pursue this claim, the State reasserts that IEEPA does not give the President the authority to regulate the activity covered by SB 419.

## 5. SB 419 does not violate the Commerce Clause (TikTok Claim 3; User Claim 4).

SB 419 prohibits the use of the TikTok platform within Montana. It does not discriminate against commerce with China but rather addresses harms stemming from a corporation's harmful data practices, which allows the Chinese Communist Party to access its user and creator data. This is not discrimination against commerce *with* China but instead

is a regulation of a corporation that has ties to the Chinese Communist Party.

Because SB 419 regulates only intrastate activity, Plaintiffs must show that the law has an indirect effect on interstate commerce that outweighs the State's interests. First, the law does not have an effect on interstate commerce because it regulates *only* conduct within the State. *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1154 (2023). Second, even if it does, TikTok's claim that SB 419 requires the sharing of more data does not establish a burden sufficient to overcome the State's consumer-protection interests. Likewise, User Plaintiffs' claim that SB 419 prevents the distribution of information across state lines similarly fails because User Plaintiffs are free to use numerous other platforms to distribute this information across state lines. To the extent that switching platforms imposes any burden, this burden is outweighed by the State's consumer-protection interest.

**6. SB 419 does not violate the Due Process Clause (User Claim 2).**

To the extent User Plaintiffs pursue their due process claims, SB 419 does not deprive User Plaintiffs of life, liberty, or property. In addition, any purported deprivation is justified because SB 419, as

explained above, is narrowly tailored and is the least restrict means of furthering the State's interest in protecting its consumers. The law addresses the precise harm it seeks to remedy and leaves open all other internet-based channels of communication.

## 7. SB 419 is not an unconstitutional Bill of Attainder (TikTok Claim 4).

SB 419 is not an unconstitutional Bill of Attainder because it does not inflict punishment on TikTok but instead prohibits future conduct. This prohibition is reasonably calculated to achieve the stated goal of protecting Montana consumers' data.

## 8. Defenses set forth in pleadings

### a. Failure to state a claim

For the reasons previously stated, TikTok's and User Plaintiffs' claims fail as a matter of law.

### b. Plaintiffs lack standing

As explained above, Defendant reserves the right to raise standing pending discovery of User Plaintiffs' use of TikTok.

## D. Computation of Damages

TikTok and User Plaintiffs seek only injunctive relief in this case and therefore do not have damages to calculate. Defendant denies that Plaintiffs have suffered any damages.

## E. Pendency of Related State or Federal Litigation

To Defendant's knowledge, there is no other federal or state lawsuit challenging the constitutionality of SB 419.

Defendant separately appealed the grant of the preliminary injunction issued in this matter. The United States Court of Appeals for the Ninth Circuit has docketed the case as *Alario, et al. v. Knudsen*, No. 24-34 (9th Cir.).

## F. Proposed Stipulations of Fact and Law

Defendant refers the Court to the separately submitted list of jointly stipulated facts by Plaintiffs and incorporate that list herein.

Defendant separately requests the following stipulated facts or points of law:

1.      TikTok is not the only "online platform that enable[s] users to create, share, and view videos and other forms of content." TikTok.Br.2.

2.      Facebook permits uses to "create, share, and view videos and other forms of content."

3.      Instagram permits uses to "create, share, and view videos and other forms of content."

4.      YouTube permits uses to "create, share, and view videos and other forms of content."

5.      The IEEPA prohibits the President from "regulat[ing] or prohibit[ing], directly or indirectly … any postal, telegraphic, telephonic, or other personal communication, which does not involve a transfer of anything of value" or the importation or exportation of "any information or informational materials." 50 U.S.C. §1702(b)(1), (3).

6.      TikTok previously argued that TikTok "does not provide the type of technology and services contemplated" by the Executive Order issued under IEEPA. *See* Compl. ¶16, *TikTok Inc. v. Trump*, 20-cv-2658 (D.D.C. filed Sept. 18, 2020).

7.      The DPA grants the President "an array of authorities to shape national defense preparedness programs and to take appropriate steps to maintain and enhance the domestic industrial base." 50 U.S.C. §4502(a)(4).

8.     The DPA gives CFIUS the authority to review "covered transaction[s]" that "could result in foreign control of any person engaged in interstate commerce in the United States." *Id.* §2170(a)(3); *id.* §4565(b)(2)(A).

9.     *TikTok, Inc. v. CFIUS*, which TikTok points to as evidence of ongoing negotiations with the federal government, involves a transaction between ByteDance and Musical.ly.

10.     In *TikTok, Inc. v. CFIUS*, TikTok asserted that the "covered transaction" at issue "did *not* include the core technology or other aspects of the TikTok business." *See TikTok Inc. v. CFIUS*, No. 20-1444, Doc. #1870778, at *2-3 (D.C. Cir. Nov. 10, 2020).

11.     Since February 19, 2021, the only docket entries in *TikTok Inc. v. CFIUS* have been a notice of withdrawal of an attorney and reports providing the "abeyance status" while "awaiting decision of agency." Docket, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir.).

12.     The reports filed in *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir.), state only that "[t]he parties continue to be involved in ongoing negotiations to determine whether this case may be resolved by mutual

agreement" and that "[a]beyance continues to be appropriate." The reports provide no information about the substance of these negotiations.

At this stage, Defendant is unwilling to stipulate to additional facts or points of law pending availability of discovery and investigation into TikTok's and User Plaintiffs' claims.

## G. Proposed Deadlines for Joinder of Parties or Amendment of Pleadings

Defendant proposes that the deadlines for joinder of parties and amendment of pleadings be those dates set forth in the parties' Joint Discovery Plan.

## H. Identifications of Controlling Issues of Law Suitable for Pretrial Disposition

Consistent with Defendant's previous statements on claims and defenses, and with the Court's November 30 Order, the success of any of Plaintiffs' claims depend on the resolution of factual disputes, including disputes about evidence in support of the State's consumer-protection interests and evidence showing ties between TikTok, ByteDance, and the Chinese Communist Party. In addition, there are disputes about TikTok's data protection practices, including how it collects and stores user and creator information.

## I. The Name and Residence of Individuals with Information about Claims or Defenses

| | |
|---|---|
| **Samantha Alario** | c/o Boone Karlberg P.C., Davis Wright Tremaine LLP |
| **Heather DiRocco** | c/o Boone Karlberg P.C., Davis Wright Tremaine LLP |
| **Carly Ann Goddard** | c/o Boone Karlberg P.C., Davis Wright Tremaine LLP |
| **Alice Held** | c/o Boone Karlberg P.C., Davis Wright Tremaine LLP |
| **Dale Stout** | c/o Boone Karlberg P.C., Davis Wright Tremaine LLP |
| **Shou Zi Chew** | c/o Covington & Burling LLP, Jackson, Murdo & Grant, P.C. |
| **David Ortley, Deputy Attorney General** | Contact through counsel. |

Witnesses regarding TikTok's data protection practices.

Witnesses regarding ByteDance's access to TikTok user data and information and creator data and information.

Witnesses regarding the Chinese Communist Party's access to TikTok user data and information and creator data and information.

Witnesses identified in discovery by any party.

Any witnesses necessary for foundation, rebuttal, or impeachment.

Any witnesses identified by TikTok or User Plaintiffs.

Any expert witnesses disclosed by any party.

**J. Substance of Any Insurance Coverage**

TikTok and User Plaintiffs seek only injunctive relief, and none of their respective claims are monetary. Thus, no insurance agreement applies.

**K. Status of Settlement Discussions and Prospects for Compromise of the Case**

No settlement discussions have taken place. Defendant does not believe a resolution is likely through compromise.

**L. Special Procedures**

Defendant does not believe any special procedures are necessary or appropriate.

DATED this 16th day of January, 2024.

Tyler Green*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor

/s/ *Christian B. Corrigan*
MONTANA ATTORNEY GENERAL'S
OFFICE

Salt Lake City, UT 84101
Phone: 703-243-9423
tyler@consovoymccarthy.com
  *Admitted *pro hac vice*

Kathleen L. Smithgall
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Phone: 703-243-9423
katie@consovoymccarthy.com

Austin Knudsen
*Montana Attorney General*
Christian B. Corrigan
  *Solicitor General*
Peter M. Torstensen, Jr.
  *Deputy Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, an accurate copy of the foregoing Defendant's Preliminary Pretrial Statement was served electronically through the Court's CM/ECF system on registered counsel.

Dated: January 16, 2024          /s/ *Christian B. Corrigan*
                                 CHRISTIAN B. CORRIGAN
                                 Counsel for Defendant