# **<u>EXHIBIT A</u>**

H. R. 815

# One Hundred Eighteenth Congress of the United States of America

## AT THE SECOND SESSION

*Begun and held at the City of Washington on Wednesday, the third day of January, two thousand and twenty-four*

## An Act

Making emergency supplemental appropriations for the fiscal year ending September 30, 2024, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. ORGANIZATION OF ACT INTO DIVISIONS.**

(a) DIVISIONS.—This Act is organized into the following divisions:

(1) DIVISION A.—Israel Security Supplemental Appropriations Act, 2024.
(2) DIVISION B.—Ukraine Security Supplemental Appropriations Act, 2024.
(3) DIVISION C.—Indo-Pacific Security Supplemental Appropriations Act, 2024.
(4) DIVISION D.—21st Century Peace through Strength Act.
(5) DIVISION E.—FEND off Fentanyl Act.
(6) DIVISION F.—Rebuilding Economic Prosperity and Opportunity for Ukrainians Act.
(7) DIVISION G.—Other Matters.
(8) DIVISION H.—Protecting Americans from Foreign Adversary Controlled Applications Act.
(9) DIVISION I.—Protecting Americans' Data from Foreign Adversaries Act of 2024.
(10) DIVISION J.—SHIP Act.
(11) DIVISION K.—Fight CRIME Act.
(12) DIVISION L.—MAHSA Act.
(13) DIVISION M.—Hamas and Other Palestinian Terrorist Groups International Financing Prevention Act.
(14) DIVISION N.—No Technology for Terror Act.
(15) DIVISION O.—Strengthening Tools to Counter the Use of Human Shields Act.
(16) DIVISION P.—Illicit Captagon Trafficking Suppression Act.
(17) DIVISION Q.—End Financing for Hamas and State Sponsors of Terrorism Act.
(18) DIVISION R.—Holding Iranian Leaders Accountable Act.
(19) DIVISION S.—Iran-China Energy Sanctions Act of 2023.
(20) DIVISION T.—Budgetary Effects.

**SEC. 2. REFERENCES.**

Except as expressly provided otherwise, any reference to "this Act" contained in any division of this Act shall be treated as referring only to the provisions of that division.

H. R. 815—61

Fusion Development Strategy programs of the People's Republic of China, including the following:

(1) A brief summary of each such identified field and its relevance to the military power and national security of the People's Republic of China.

(2) The implications for the national security of the United States as a result of the leadership or dominance by the People's Republic of China in each such identified field and associated supply chains.

(3) The identification of at least 10 entities domiciled in, controlled by, or directed by the People's Republic of China (including any subsidiaries of such entity), involved in each such identified field, and an assessment of, with respect to each such entity, the following:

(A) Whether the entity has procured components from any known United States suppliers.

(B) Whether any United States technology imported by the entity is controlled under United States regulations.

(C) Whether United States capital is invested in the entity, either through known direct investment or passive investment flows.

(D) Whether the entity has any connection to the People's Liberation Army, the Military-Civil Fusion program of the People's Republic of China, or any other state-sponsored initiatives of the People's Republic of China to support the development of national champions.

(c) APPROPRIATE CONGRESSIONAL COMMITTEES DEFINED.—In this section, the term "appropriate congressional committees" means—

(1) the Committee on Foreign Affairs of the House of Representatives;

(2) the Committee on Armed Services of the House of Representatives;

(3) the Committee on Foreign Relations of the Senate; and

(4) the Committee on Armed Services of the Senate.

# DIVISION H—PROTECTING AMERICANS FROM FOREIGN ADVERSARY CONTROLLED APPLICATIONS ACT

**SEC. 1. SHORT TITLE.**

This division may be cited as the "Protecting Americans from Foreign Adversary Controlled Applications Act".

**SEC. 2. PROHIBITION OF FOREIGN ADVERSARY CONTROLLED APPLICATIONS.**

(a) IN GENERAL.—

(1) PROHIBITION OF FOREIGN ADVERSARY CONTROLLED APPLICATIONS.—It shall be unlawful for an entity to distribute, maintain, or update (or enable the distribution, maintenance, or updating of) a foreign adversary controlled application by carrying out, within the land or maritime borders of the United States, any of the following:

H. R. 815—62

      (A) Providing services to distribute, maintain, or update such foreign adversary controlled application (including any source code of such application) by means of a marketplace (including an online mobile application store) through which users within the land or maritime borders of the United States may access, maintain, or update such application.

      (B) Providing internet hosting services to enable the distribution, maintenance, or updating of such foreign adversary controlled application for users within the land or maritime borders of the United States.

  (2) APPLICABILITY.—Subject to paragraph (3), this subsection shall apply—

      (A) in the case of an application that satisfies the definition of a foreign adversary controlled application pursuant to subsection (g)(3)(A), beginning on the date that is 270 days after the date of the enactment of this division; and

      (B) in the case of an application that satisfies the definition of a foreign adversary controlled application pursuant to subsection (g)(3)(B), beginning on the date that is 270 days after the date of the relevant determination of the President under such subsection.

  (3) EXTENSION.—With respect to a foreign adversary controlled application, the President may grant a 1-time extension of not more than 90 days with respect to the date on which this subsection would otherwise apply to such application pursuant to paragraph (2), if the President certifies to Congress that—

      (A) a path to executing a qualified divestiture has been identified with respect to such application;

      (B) evidence of significant progress toward executing such qualified divestiture has been produced with respect to such application; and

      (C) there are in place the relevant binding legal agreements to enable execution of such qualified divestiture during the period of such extension.

(b) DATA AND INFORMATION PORTABILITY TO ALTERNATIVE APPLICATIONS.—Before the date on which a prohibition under subsection (a) applies to a foreign adversary controlled application, the entity that owns or controls such application shall provide, upon request by a user of such application within the land or maritime borders of United States, to such user all the available data related to the account of such user with respect to such application. Such data shall be provided in a machine readable format and shall include any data maintained by such application with respect to the account of such user, including content (including posts, photos, and videos) and all other account information.

(c) EXEMPTIONS.—

  (1) EXEMPTIONS FOR QUALIFIED DIVESTITURES.—Subsection (a)—

      (A) does not apply to a foreign adversary controlled application with respect to which a qualified divestiture is executed before the date on which a prohibition under subsection (a) would begin to apply to such application; and

H. R. 815—63

(B) shall cease to apply in the case of a foreign adversary controlled application with respect to which a qualified divestiture is executed after the date on which a prohibition under subsection (a) applies to such application.

(2) EXEMPTIONS FOR CERTAIN NECESSARY SERVICES.—Subsections (a) and (b) do not apply to services provided with respect to a foreign adversary controlled application that are necessary for an entity to attain compliance with such subsections.

(d) ENFORCEMENT.—
　(1) CIVIL PENALTIES.—
　　(A) FOREIGN ADVERSARY CONTROLLED APPLICATION VIOLATIONS.—An entity that violates subsection (a) shall be subject to pay a civil penalty in an amount not to exceed the amount that results from multiplying $5,000 by the number of users within the land or maritime borders of the United States determined to have accessed, maintained, or updated a foreign adversary controlled application as a result of such violation.
　　(B) DATA AND INFORMATION VIOLATIONS.—An entity that violates subsection (b) shall be subject to pay a civil penalty in an amount not to exceed the amount that results from multiplying $500 by the number of users within the land or maritime borders of the United States affected by such violation.
　(2) ACTIONS BY ATTORNEY GENERAL.—The Attorney General—
　　(A) shall conduct investigations related to potential violations of subsection (a) or (b), and, if such an investigation results in a determination that a violation has occurred, the Attorney General shall pursue enforcement under paragraph (1); and
　　(B) may bring an action in an appropriate district court of the United States for appropriate relief, including civil penalties under paragraph (1) or declaratory and injunctive relief.

(e) SEVERABILITY.—
　(1) IN GENERAL.—If any provision of this section or the application of this section to any person or circumstance is held invalid, the invalidity shall not affect the other provisions or applications of this section that can be given effect without the invalid provision or application.
　(2) SUBSEQUENT DETERMINATIONS.—If the application of any provision of this section is held invalid with respect to a foreign adversary controlled application that satisfies the definition of such term pursuant to subsection (g)(3)(A), such invalidity shall not affect or preclude the application of the same provision of this section to such foreign adversary controlled application by means of a subsequent determination pursuant to subsection (g)(3)(B).

(f) RULE OF CONSTRUCTION.—Nothing in this division may be construed—
　(1) to authorize the Attorney General to pursue enforcement, under this section, other than enforcement of subsection (a) or (b);

H. R. 815—64

(2) to authorize the Attorney General to pursue enforcement, under this section, against an individual user of a foreign adversary controlled application; or

(3) except as expressly provided herein, to alter or affect any other authority provided by or established under another provision of Federal law.

(g) DEFINITIONS.—In this section:

(1) CONTROLLED BY A FOREIGN ADVERSARY.—The term "controlled by a foreign adversary" means, with respect to a covered company or other entity, that such company or other entity is—

(A) a foreign person that is domiciled in, is headquartered in, has its principal place of business in, or is organized under the laws of a foreign adversary country;

(B) an entity with respect to which a foreign person or combination of foreign persons described in subparagraph (A) directly or indirectly own at least a 20 percent stake; or

(C) a person subject to the direction or control of a foreign person or entity described in subparagraph (A) or (B).

(2) COVERED COMPANY.—

(A) IN GENERAL.—The term "covered company" means an entity that operates, directly or indirectly (including through a parent company, subsidiary, or affiliate), a website, desktop application, mobile application, or augmented or immersive technology application that—

(i) permits a user to create an account or profile to generate, share, and view text, images, videos, real-time communications, or similar content;

(ii) has more than 1,000,000 monthly active users with respect to at least 2 of the 3 months preceding the date on which a relevant determination of the President is made pursuant to paragraph (3)(B);

(iii) enables 1 or more users to generate or distribute content that can be viewed by other users of the website, desktop application, mobile application, or augmented or immersive technology application; and

(iv) enables 1 or more users to view content generated by other users of the website, desktop application, mobile application, or augmented or immersive technology application.

(B) EXCLUSION.—The term "covered company" does not include an entity that operates a website, desktop application, mobile application, or augmented or immersive technology application whose primary purpose is to allow users to post product reviews, business reviews, or travel information and reviews.

(3) FOREIGN ADVERSARY CONTROLLED APPLICATION.—The term "foreign adversary controlled application" means a website, desktop application, mobile application, or augmented or immersive technology application that is operated, directly or indirectly (including through a parent company, subsidiary, or affiliate), by—

(A) any of—

(i) ByteDance, Ltd.;

H. R. 815—65

    (ii) TikTok;
    (iii) a subsidiary of or a successor to an entity identified in clause (i) or (ii) that is controlled by a foreign adversary; or
    (iv) an entity owned or controlled, directly or indirectly, by an entity identified in clause (i), (ii), or (iii); or
   (B) a covered company that—
    (i) is controlled by a foreign adversary; and
    (ii) that is determined by the President to present a significant threat to the national security of the United States following the issuance of—
     (I) a public notice proposing such determination; and
     (II) a public report to Congress, submitted not less than 30 days before such determination, describing the specific national security concern involved and containing a classified annex and a description of what assets would need to be divested to execute a qualified divestiture.
  (4) FOREIGN ADVERSARY COUNTRY.—The term "foreign adversary country" means a country specified in section 4872(d)(2) of title 10, United States Code.
  (5) INTERNET HOSTING SERVICE.—The term "internet hosting service" means a service through which storage and computing resources are provided to an individual or organization for the accommodation and maintenance of 1 or more websites or online services, and which may include file hosting, domain name server hosting, cloud hosting, and virtual private server hosting.
  (6) QUALIFIED DIVESTITURE.—The term "qualified divestiture" means a divestiture or similar transaction that—
   (A) the President determines, through an interagency process, would result in the relevant foreign adversary controlled application no longer being controlled by a foreign adversary; and
   (B) the President determines, through an interagency process, precludes the establishment or maintenance of any operational relationship between the United States operations of the relevant foreign adversary controlled application and any formerly affiliated entities that are controlled by a foreign adversary, including any cooperation with respect to the operation of a content recommendation algorithm or an agreement with respect to data sharing.
  (7) SOURCE CODE.—The term "source code" means the combination of text and other characters comprising the content, both viewable and nonviewable, of a software application, including any publishing language, programming language, protocol, or functional content, as well as any successor languages or protocols.
  (8) UNITED STATES.—The term "United States" includes the territories of the United States.

**SEC. 3. JUDICIAL REVIEW.**

 (a) RIGHT OF ACTION.—A petition for review challenging this division or any action, finding, or determination under this division

H. R. 815—66

may be filed only in the United States Court of Appeals for the District of Columbia Circuit.

(b) EXCLUSIVE JURISDICTION.—The United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction over any challenge to this division or any action, finding, or determination under this division.

(c) STATUTE OF LIMITATIONS.—A challenge may only be brought—

(1) in the case of a challenge to this division, not later than 165 days after the date of the enactment of this division; and

(2) in the case of a challenge to any action, finding, or determination under this division, not later than 90 days after the date of such action, finding, or determination.

# DIVISION I—PROTECTING AMERICANS' DATA FROM FOREIGN ADVERSARIES ACT OF 2024

**SEC. 1. SHORT TITLE.**

This division may be cited as the "Protecting Americans' Data from Foreign Adversaries Act of 2024".

**SEC. 2. PROHIBITION ON TRANSFER OF PERSONALLY IDENTIFIABLE SENSITIVE DATA OF UNITED STATES INDIVIDUALS TO FOREIGN ADVERSARIES.**

(a) PROHIBITION.—It shall be unlawful for a data broker to sell, license, rent, trade, transfer, release, disclose, provide access to, or otherwise make available personally identifiable sensitive data of a United States individual to—

(1) any foreign adversary country; or

(2) any entity that is controlled by a foreign adversary.

(b) ENFORCEMENT BY FEDERAL TRADE COMMISSION.—

(1) UNFAIR OR DECEPTIVE ACTS OR PRACTICES.—A violation of this section shall be treated as a violation of a rule defining an unfair or a deceptive act or practice under section 18(a)(1)(B) of the Federal Trade Commission Act (15 U.S.C. 57a(a)(1)(B)).

(2) POWERS OF COMMISSION.—

(A) IN GENERAL.—The Commission shall enforce this section in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this section.

(B) PRIVILEGES AND IMMUNITIES.—Any person who violates this section shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act.

(3) AUTHORITY PRESERVED.—Nothing in this section may be construed to limit the authority of the Commission under any other provision of law.

(c) DEFINITIONS.—In this section:

(1) COMMISSION.—The term "Commission" means the Federal Trade Commission.